THE GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY
v. WILLIAM DAVIS.

No. 19.

1. **Partnership of Railway Companies.**—A contract by which a number of railway companies lease their roads and other property to one company for ninety-nine years, the latter company agreeing to operate and maintain the lines and pay each of the companies a certain percentage of the net profits, is a contract of partnership and not a lease.

2. **Charge—Master and Servant.**—On October 10, 1886, a railway company was liable in damages only for the gross negligence of its servants, but was liable to its servants for injuries inflicted through the negligence of an incompetent fellow servant, where it had retained him in its employ with knowledge of his incompetency, or when by the exercise of ordinary care it could have known of his incompetency; and when a servant seeks to recover under the latter circumstances, a charge on gross negligence was unnecessary.

3. **Charge — Measure of Damages.** — In an action by a father for the death of his minor son, when there is evidence to support it, it is not error to charge that the jury shall assess plaintiff's damages at such sum as may be calculated, from plaintiff's expectation of pecuniary aid from his son after arriving at 21 years of age, considering his disposition and ability to contribute to his wants and necessities during the father's probable duration of life, at the same time taking into consideration the father's age, occupation, health, and pecuniary condition and probable wants.

4. **Charge.** — An instruction that the jury are the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony, is proper, and not objectionable on the ground that it may lead the jury to believe some of the witnesses unworthy of credit.

**5. Evidence.** — Though the incompetency of an employe can not be proven by specific acts of carelessness, yet where these acts have been brought to the employer's knowledge, they can be proved to establish such knowledge.

**6. Evidence—General Reputation.**—A question as to what a locomotive engineer's general reputation as to care and competency while running his engine was, is improper, where it is not confined to his reputation among those persons engaged in the same kind of occupation, as the general public could not be acquainted with his reputation.

**7. Charge.**—An instruction, that a railway company is liable if it failed to furnish a safe and suitable car, with the necessary appliances, for the use of its employes, and an employe was killed by reason thereof, is erroneous, as it makes it the duty of the company to absolutely and infallibly furnish a safe and suitable car, no matter what care and diligence may have been exercised in selecting and inspecting the same. This error is not cured by another part of the charge, in effect, that it is the duty of the railway company to use all reasonable care in furnishing safe and suitable cars.

APPEAL from Bexar.    Tried below before Hon. W. W. KING.

*Upson & Bergstrom*, for appellant.—The contract was a lease, and not a partnership. Bish. on Con., sec. 380; Watrous v. McKie, 54 Texas, 71; 2 Kent, 801; 22 Wall., 112; 1 Bates on Part., secs. 15, 17, 23; Buzzard v. Bank, 67 Texas, 83; Bank v. Pennington, 75 Texas, 272; Goode v. McCartney, 10 Texas, 193; Friedlander v. Hillcoat, 14 S. W. Rep., 786.

On charge of court: Railway v. Oran, 49 Texas, 345; Railway v. Lyde, 57 Texas, 509; Railway v. Bell, 75 Texas, 50.

*Charles W. Ogden*, for appellee.—1. The contract was a partnership. Cothran v. Marmaduke, 60 Texas, 370; Stevens v. Bank, 62 Texas, 499; Hereford v. Davis, 102 U. S., 235; Beecher v. Bush, 45 Mich., 188.

2. The charge was correct.    Hough v. Railway, 100 U. S., 213; Railway v. McDaniel. 107 U. S., 454; Railway v. Guyton, 115 Ind., 450.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by petition to recover actual damages in the sum of $50,000, which appellee, who was plaintiff below, claims to have sustained in the death of his son, Edward Davis, which resulted from one train of defendant's cars being negligently run into by another of its trains, October 10, 1886.

The plaintiff in his petition charges, that the defendant, as was its duty to do, failed to furnish the usual and customary caboose car having end doors with glass panes, and an outlook on top, but in its stead attached an empty freight car, with sliding side doors, but with no end doors or outlook on top of said car from which an approaching train could be seen, wherein plaintiff's son, in the performance of his duty as rear brakeman, was riding at the time of the accident, and could not see and avoid an approaching train.

That said trains were negligently run from their starting points only ten minutes apart.

That the train which ran into the train upon which plaintiff's son received his fatal injuries was in charge and under the control of a reckless, careless, and intemperate and utterly incompetent conductor, one Samuel Greene, and an inexperienced and incompetent engineer, one Thomas Henry, which defendant well knew, and of which plaintiff's son had no knowledge; and that by reason of the carelessness, intemperance, and incompetency of said conductor, and the inexperience and incompetency of said engineer, said train under their control was by them negligently run into the train upon which plaintiff's son was employed as brakeman, with such force and violence as to inflict upon him, said son, injuries from which he died the same day.

Defendant answered, by its first amended original answer, by general denial, and specially denying that the death of plaintiff's son was caused by a collision of any trains of cars owned or operated by it, or by reason of the carelessness, negligence, or intemperance or incompetency of an employe of defendant or any person under its control, or that plaintiff's said son, or any one, was in its employ on the line of said railroad at the time of the injury complained of.

Defendant denies that plaintiff's son was a minor at the time of his employment, or that plaintiff was entitled to his son's services, but avers that he entered into the service of the Southern Pacific Company, wherein his death resulted, representing himself, and the plaintiff also representing him to be, 21 years of age, and fully competent to contract and act for himself and receive the proceeds of his labor, and that he appeared to be of full age.

Defendant avers that the collision set out in plaintiff's petition was an unavoidable accident, caused by a dense fog, rendering the lights on the colliding cars undiscernible, and was one of the risks assumed by plaintiff's son and incident to his employment, for which the employer was in no manner responsible.

Plaintiff filed his exceptions to the denial in defendant's answer that plaintiff's son was a minor, and to the averments in said answer as to plaintiff's son entering into the service of the Southern Pacific Company representing himself to be 21 years of age, and as to the accident being unavoidable, on the ground that the same purported to set up a defense for the Southern Pacific Company which defendant had no right to make; which exceptions were overruled by the court.

The case was tried by a jury, and resulted in a verdict and judgment in favor of the plaintiff, January 31, 1891, for $11,000.

A considerable portion of the evidence in the lower court was as to whether appellant or some one else was responsible, and a large part of the brief of appellant in this court is devoted to the discussion of the na-

ture, purpose, and intent of a certain instrument of writing which was, without objection on the part of appellee, introduced in evidence by appellant. It is as follows, leaving out the preamble, which sets out the names of the contracting corporations, appellant being one of the number:

" That the Southern Pacific Railroad Company, organized and existing under the laws of the United States and the State of California, hereby leases to the said Southern Pacific Company, for the term of ninety-nine years from the date hereof, all of its railroad situated in the State of California, known and designated as the Southern Pacific Railroad of California, with all its branches and all railroads now leased by it, together with the rolling stock, telegraph lines, tools, and property of every kind and nature whatsoever now in use upon or in connection with said railroads, and together with all of the appurtenances thereunto belonging, with the right to possess, maintain, use, and operate the said property, and to receive the rents, issues, and profits thereof.

" That the said Southern Pacific Railroad Company, organized and existing under the laws of the Territory of Arizona, hereby leases to the said Southern Pacific Company, for the term of ninety-nine years from the date hereof, all of its railroad situated in the Territory of Arizona, and known and designated as the Southern Pacific Railroad of Arizona, together with all its branches, and all the rolling stock, telegraph lines, tools, and property of every kind and nature whatsoever now in use upon or in connection with said railroad or branches, and together with all the appurtenances thereunto belonging, with the right to possess, maintain, use, and operate the said property, and to receive the rents, issues, and profits thereof.

" That the said Southern Pacific Railroad Company, organized and existing under the laws of the Territory of New Mexico, hereby leases to the Southern Pacific Company, for the term of ninety-nine years from the date hereof, all of its railroad situated in the Territory of New Mexico, and known and designated as the Southern Pacific Railroad of New Mexico, together with all its brances, and all the rolling stock, telegraph lines, tools, and property of every kind and nature whatsoever now in use upon and in connection with said railroad or its branches, and together with all the appurtenances thereunto belonging, with the right to possess, maintain, use, and operate the said property, and to receive the rents, issues, and profits thereof.

" That the said Galveston, Harrisburg & San Antonio Railway Company hereby leases to the said Southern Pacific Company, for the term of ninety-nine years from the date hereof, all its railroads situated in the State of Texas, and known and designated as the Galveston, Harrisburg & San Antonio Railway Company, with all its branches, and all the rolling stock, telegraph lines, tools, and property of every kind and nature whatsoever now in use upon or in connection with said railroad or its

branches, and together with all appurtenances thereunto belonging, and all other property now owned, held, and possessed by it, with the right to possess, maintain, use, and operate the said property, and to receive the rents, issues, and profits thereof.

" That the said Texas & New Orleans Railroad Company of 1874 hereby leases to the said Southern Pacific Company, for the term of ninety-nine years from the date hereof, all of its railroad situated in the State of Texas, and known and designated as the Texas & New Orleans Railroad of 1874, together with all of its branches, and all the rolling stock, telegraph lines, tools, and property of every kind and nature whatsoever now in use upon or in connection with said railroad or branches, and together with all the appurtenances thereunto belonging, with the right to possess, maintain, use, and operate the said property, and to receive the rents, issues, and profits thereof.

" That the said Louisiana Western Railroad Company hereby leases to the said Southern Pacific Company, for the term of ninety-nine years from the date hereof, all of its railroad situated in the States of Texas and Louisiana, and known and designated as the Louisiana Western Railroad, together with all its branches, and all the rolling stock, telegraph lines, tools, and property of every kind and nature whatsoever now in use upon or in connection with said railroad or branches, and together with all the appurtenances thereunto belonging, with the right to possess, maintain, use, and operate the said property, and to receive the rents, issues, and profits thereof.

" That the Morgan's Louisiana & Texas Railroad and Steamship Company hereby leases to the said Southern Pacific Company, for the term of ninety-nine years from the date hereof, its railroad situated in the State of Louisiana, and known and designated as the Morgan's Louisiana & Texas Railroad, all the branches thereof, and the rolling stock, telegraph lines, tools, and property of every kind and nature whatsoever now in use upon or in connection with said railroad and branches, and together with all the appurtenances thereunto belonging; also all the steamships, steamboats, tugs, horse, piers, landings, depots, buildings, and all other property, real and personal, now owned, held, or possessed by the said Morgan's Louisiana & Texas Railroad and Steamship Company, with right to possess, maintain, use, and operate the said property, and to receive the rents, issues, and profits thereof.

" That the said Mexican International Railroad Company hereby leases to the said Southern Pacific Company, for the term of ninety-nine years from the date hereof, all of its railroad, and the branches thereof, situated in the Republic of Mexico, known and designated as the Mexican International Railroad, together with all its branches, and the rolling stock, telegraph lines, tools, and property of every kind and nature whatsoever now in use upon or in connection with the said railroad, and

together with all the appurtenances thereunto belonging, with the right to possess, maintain, use, and operate the said property, and to receive rents, issues, and the profits thereof.

" In consideration of the leases aforesaid, the Southern Pacific Company agrees to and with the other corporations parties hereto, that it will keep the said leased property in good order, condition, and repair; operate, maintain, add to, and better the same at its own expense; pay all taxes legally assessed against or levied thereon; and will upon the termination of this lease return the same to the respective parties from which it was leased, or to their successors, with additions and betterments, in as good condition and repair as the same was at the date hereof.

" That it hereby assumes and will discharge all the liabilities and obligations of every kind of the said railroad companies and each of them, except the obligations to pay the principal of their indebtedness, known as the bonded indebtedness, now outstanding and secured by mortgage or deed of trust, or which may hereafter be incurred by either of said companies under the provisions of any existing mortgage or deed of trust, or any mortgage or deed of trust hereafter, with the consent of this company made; that as to such bonded indebtedness, it will pay off and discharge at maturity the interest upon the same, and will, upon demand of either of said railroad companies, guarantee, in such form as said company may require, the payment of the principal and interest thereof.

" That said Southern Pacific Company will annually, on the 1st day of May, pay the following named railroad companies as rental a sum equal to $93\frac{1}{12}$ per cent of its net profits, if any net profits there be, for the year ending on the 31st day of December next preceding that date, as follows:

" To the said Southern Pacific Railroad Company, existing under the laws of the United States and the State of California, $26\frac{1}{2}$ per cent of said net profits.

" To the said Southern Pacific Railroad Company, existing under the laws of the Territory of Arizona, 12 per cent of said net profits.

" To the said Southern Pacific Railroad Company, existing under the laws of the Territory of New Mexico, 4 per cent of said net profits.

" To the Galveston, Harrisburg & San Antonio Railway Company, $16\frac{1}{4}$ per cent of said net profits.

" To the said Texas & New Orleans Railroad Company of 1874, $7\frac{1}{2}$ per cent of said net profits.

" To the said Louisiana Western Railroad Company, $3\frac{1}{3}$ per cent of said net profits.

" To the said Morgan's Louisiana & Texas Railroad and Steamship Company, $22\frac{1}{2}$ per cent of said net profits.

" To the said Mexican International Railroad Company, 1 per cent of said net profits.

"The term net profits, as used herein, shall be construed to mean the moneys on hand available for dividends after all expenses, payments, and disbursements of every nature and kind of the said Southern Pacific Company, except for the rental of railroads now or hereafter leased by said company, have been deducted."

Appellant contends that this instrument is a lease, and being a lease, appellant was not liable in damages for any tort occurring on its line by those operating its cars and other property. The court below rightly held that it was not a lease, but a contract of partnership. By every test that can be applied to this paper it makes the parties to it partners. Each of the contracting parties is bound to put into the common business its rolling stock and other property, all to be under the management of the Southern Pacific Company, each one to receive its proportionate share of the net profits. There is a union of services and property and a division of profits. Partnership is a voluntary contract between two or more competent persons to place their money, property, labor, and skill, or some one or all of them, into some lawful enterprise or business, with an understanding that there shall be a community of interest in the loss. Then the case is one of actual partnership. It is not essential that all these ingredients should occur to establish the relation of partners. Berthold v. Goldsmith, 24 How., 536–544.

It seems that the Southern Pacific Company did not put any property or capital in the business, but it put its skill and ability and management of the partnership, for which it was to receive $6\frac{11}{12}$ per cent of the net profits. All the elements of partnership are contained in this agreement; and so construed, the appellant would be liable for a tort committed by the agents or employes of the partnership, if done within the scope of their business. This construction of the instrument disposes of the first, second, third, fourth, fifth, sixth, twenty-seventh, twenty-eighth, thirtieth, and thirty-first assignments of error.

Under the statute in force at the time of the death of Edward Davis, to-wit, October 10, 1886, in cases of this character the railway company was liable in damages only for the gross negligence of its servants or employes, and not ordinary negligence.

In this case the question of the negligence of the fellow servants of deceased, as well as a failure to furnish a suitable caboose car, was submitted to the jury. The testimony in the record concerning the car in which Edward Davis was riding at the time is rather unsatisfactory, and alone would not furnish sufficient proof upon which to predicate the verdict in this case, and the jury must have considered the question of the negligence of defendant's servants or employes, as they should have done under the charge given.

The fifth clause of the charge is as follows:

" 5. It is also the duty of a railway to use all reasonable care and caution in the employment of careful and competent employes, that is, persons of ordinary skill and experience, who are capable of efficiently discharging the duties which they are directed to perform, so that no unnecessary risk shall be incurred by any of the other servants. However, when a person enters the service of a railway company, he thereby assumes and undertakes all the ordinary risks and hazards incident to that employment, including the negligence of his fellow servants, provided the railway company has taken reasonable care and precaution in selecting careful and competent employes. But should the railway company retain in its service a reckless and incompetent employe, after it has discovered his recklessness or incompetency, and an employe is thereby injured through his negligence, then the company is liable, although the person injured be a fellow servant of the person inflicting the injury."

The giving of this charge is assigned as error, one reason being, " because the same instructed the jury that the defendant would be liable for injury to plaintiff's son resulting from the ordinary negligence of defendant's servants, viz., its conductor, Greene, and engineer, Henry, or either of them, when under the law as it existed at that time, defendant could only be made liable for the *gross* negligence or carelessness of its servants, and the court failed to so charge the jury, or to give any instruction as to gross negligence."

Under the law as it existed at the time of the death of Edward Davis, the railway company was not liable or responsible for any damage done or injury inflicted upon an employe by his fellow servant, either by gross or ordinary negligence, unless the company had not exercised care in the selection of such fellow servants, or had kept the same in its employment when it knew, or could have known by the exercise of ordinary precaution and inquiry, of the recklessness, carelessness, or incompetency of such employes. In the case under consideration it is alleged, and there is some proof to sustain it, that the death of Edward Davis was caused through the recklessness and negligence of his fellow servants, who were incompetent, inexperienced, and intemperate, and that the character of these employes was known to the railway company.

We are of the opinion that the only issues in this case were, did the accident which resulted in the death of plaintiff's son occur from the negligence of incompetent, reckless, or inexperienced employes who were fellow servants of deceased; and did the railway company know, or could it have known by reasonable diligence and inquiry, of the character of such employes; and did it exercise proper care in furnishing a suitable and safe caboose car? The question of the degree of negligence can not be of any importance in the determination of the case. All the cases to which we have had access, or to which we have been referred by counsel for appellant, in which it has been held that under the last clause of arti-

cle 2899, previous to its amendment in 1887, it was incumbent upon the trial judge to instruct the jury as to gross negligence, were suits brought against railway companies by passengers or other parties not connected by employment with the railways. Railway v. Kutac, 76 Texas, 473; Railway v. Hanks, 73 Texas, 323; Railway v. Hill, 71 Texas, 451.

The section of the charge complained of in the fifteenth assignment of error is as follows:

"14. Should you find for the plaintiff under this charge, then you will assess the damage at such sum as may be calculated from plaintiff's reasonable expectation of pecuniary aid from his son after arriving at 21 years of age, considering his disposition and ability to contribute to his wants and necessities during the father's probable duration of life, at the same time taking into consideration the father's age, occupation, health, and pecuniary condition and probable wants. In estimating the damage, you must exercise a sound discretion, although you may find for a greater or less sum than that formerly furnished by the son to the father, while you may also consider the prospective wants of the father and the probable increasing ability of the son to administer to his necessities; but you must not allow plaintiff anything for the bodily pain and suffering of the son or the mental pain and anguish undergone by the father by the death of the son and the loss of his society."

Appellant objects to this charge, because there is no evidence to support it, because the measure of damages should have been limited to the son's probable earnings during his minority, less his expenses, and also because it was a charge upon the weight of evidence, in assuming that deceased had furnished plaintiff sums of money. There is ample evidence to justify the court in submitting the question to the jury, and the charge was not upon the weight of testimony in assuming that deceased had given sums of money, because it was an uncontroverted fact, sworn to by plaintiff. The measure of damages is properly stated by the court in the charge, as the jury are plainly told, among other things, that they must take into consideration the disposition and ability of the son to give to his father, and this was not to be confined to his minority. Railway v. Lester, 75 Texas, 56; Railway v. Cowser, 57 Texas, 294.

The sixteenth assignment of error complains because the court instructs the jury, that they are the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony, and seems to urge that it might lead the jury to believe some of the witnesses unworthy of belief. The charge was eminently correct and proper, and might be given in any case. It embodies a truism of the law.

While the competency or incompetency of an employe can not be proved by specific acts of carelessness, yet where these acts have been brought to the knowledge of the master, they can be proved to establish that knowledge on the part of the master. The witness Barker testified as to an act

of negligence, at Gonzales, of conductor Greene, while he was a brakeman, and at sometime before the death of young Davis, and that he notified Van Vleck and McQueeny, high officials of the road, of the conduct of the brakeman.    It would have been better had the court instructed the jury of the object in the admission of the testimony, confining it to the subject of notice; but appellant does not object on this ground, and it should have asked a charge embodying this idea.

The objection to Nicely's testimony as to the competency of the engineer goes to the weight, and not the competency of the evidence, and we do not see that he narrates any specific instance of neglect on the part of the engineer.    The declaration set forth in the bill of exceptions, " I have seen him running a train recklessly and carelessly," when taken in connection with the rest of this witness' testimony, shows that he was not speaking of a particular instance, but the whole time he worked with him.

The question put to B. A. Pickren, a witness for the defense, as to Henry being an experienced engineer with five or six months experience, was on the cross-examination, and in view of what the witness had sworn to, a proper question.    The court properly refused to allow witness Van Vleck to testify as to what Davidson, Toonsey, and Pickren told him, it being clearly hearsay of the worst character.

Defendant introduced Van Vleck, division superintendent, and asked him the question, " Do you know what Thomas Henry's general reputation was, and how he was generally regarded as to care and competency while running his engine on the road?    If so, what was it?"    The engineer Henry was engaged in a class of business with which the general public is not acquainted; even those who, as passengers, are in the habit of travelling on railroad trains would not and could not become acquainted with the general reputation of the engineers who stood at the throttle, as to their efficiency.    Then, would it be proper to address a question to a witness as to the general reputation of one engaged in such class of occupation, without confining it to those engaged in the same or similar business?    We think not.    Every one in a community is capable of contributing to the general opinion which makes up general reputation as to truth and veracity, of chastity or violence; and doubtless the opinion of the public generally as to the competency of a doctor or lawyer, as they are brought so closely into contact with the public, might go to show general reputation; but where a man is engaged in an occupation which throws him into contact with a certain class only, inquiry as to his reputation must be confined to that class.    We think the question was too general, and the answer given does not show where or how the information was gained.

The fourth clause of the charge of the court is assigned as error by the appellant, and is as follows: " If you believe from the testimony that the

defendant company failed to furnish a safe and suitable car with the necessary appliances for the use of its employes, and you further believe that the death of plaintiff's son was caused by reason thereof, or that by the use of a safe and suitable car the injury would have been avoided, then you will find for the plaintiff."

The proof was meagre as to the unsuitableness or unsafeness of the car in which deceased was riding. It was not a regular caboose car, with a cupola on top with glass windows all around, and the other ordinary appliances. The charge complained of makes it the duty of the railroad company to absolutely and infallibly furnish a safe and suitable car, and no matter what care and diligence may have been exercised in selecting or in inspecting the same from time to time, it would still be liable. It is the duty of the master in the first instance to use reasonable care and precaution in the selection of the machinery, tools, and appliances to be used by his servants, and then to exercise reasonable care and diligence in detecting defects and remedying them. The master is not absolutely required to furnish safe and suitable machinery and appliances, but to exercise reasonable and proper foresight, knowledge, care, and discretion in furnishing the same. This is the highest plane to which human responsibility can be required to ascend. The question of what reasonable care may be, depends upon the relation of the parties, the business in which they are engaged, and varies according to the exigencies which require vigilance and attention, conforming in amount and degree to the circumstances under which it is exerted. Wood's Mast. and Serv., sec. 329, p. 685.

Actual notice of defective, unsuitable, or dangerous appliances need not be brought home to the master, but it is enough to show that he ought to have known it, and might have known it by the exercise of reasonable and proper care in selecting or examining and inspecting the appliances. In the latter part of the third clause of the charge the jury is instructed, that "The law makes it the duty of a railway company to use all reasonable care and precaution in furnishing for the use of its employes safe and suitable cars, well adapted for the purposes for which they are intended to be used, with such appliances as are necessary to the safety of its train men." This immediately precedes the objectionable charge, and it is insisted by appellee that they be construed together, and we will do so. Taken together, the charge, in effect, instructs the jury, that the law requires the defendant to use all reasonable care and precaution to furnish safe and suitable cars; therefore, if you find that defendant failed to furnish a safe and suitable car, you will take it for granted that they did not exercise proper care and precaution, and knew, or could have known by ordinary diligence, that the car was unsafe, and you should find for the plaintiff. This is the legitimate construction to

be placed upon the two clauses of the charge, taken together. The minds of the jury are not directed to the question of reasonable care and diligence of defendant in furnishing the car, but rests solely on the question of whether the car was safe or unsafe. This defect in the charge was brought to the notice of the trial court in the motion for new trial.

We think the charge of the court erroneous and calculated to lead the jury to the conclusion, that if the defendant failed to furnish a suitable car, then it was liable in damages, regardless of any care or caution exercised by defendant in connection with the car.

There are thirty-one assignments of error, many of them hypercritical and immaterial, and it is unnecessary to discuss them.

For the error indicated in the charge, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 4, 1893.