GULF, C. & S. F. RY. CO. v. HICKS et ux. (No. 1286.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 27, 1918. Rehearing Denied April 24, 1918.)

1. DEATH ⊂⟞⟝18(3)—RIGHT OF ACTION—LOSS OR INJURY.

In action for death of an adult son the financial condition of parents was no bar to right of recovery, the inquiry being whether deceased, had he lived, would probably have contributed in a financial way to the benefit of plaintiffs.

2. DEATH ⊂⟞⟝99(5) — DAMAGES — EXCESSIVE DAMAGES.

In an action by surviving parents, respectively 65 and 63 years old, for the death of an adult son, where it appeared that the son was an only child, single, and living with his parents, that he was active in the performance of the various duties about plaintiffs' farm, consisting of 160 acres in cultivation, and several hundred acres in pasture land, that he nursed plaintiffs, giving them medicine during their illness, was attentive and affectionate in the performance of his duties, declared his intention of remaining with his parents permanently, that the reasonable value of his services was $60 a month, and that he had been paid practically nothing for what he had done, a verdict of $2,750 was warranted.

3. EVIDENCE ⊂⟞⟝123(10)—RES GESTÆ.

Testimony of a witness, who went to the scene of the wreck immediately after it happened, that it was about 20 minutes before the members of the train crew who went away returned, and that deceased was not removed from the wreckage until they got back, was part of the res gestæ.

4. APPEAL AND ERROR ⊂⟞⟝907(2)—ADMISSIBILITY OF EVIDENCE UNDER PLEADINGS—PRESUMPTIONS.

Where plaintiffs alleged, in an action for wrongful death, the abandonment of the wreck and their son as one of the acts of negligence, and it does not appear from the record that such allegation was excepted to, the court on appeal is authorized to conclude that the court properly admitted evidence to the effect that the son was not removed from the wreck for some time after the accident.

5. APPEAL AND ERROR ⊂⟞⟝1052(5)—IRRELEVANT TESTIMONY—HARMLESS ERROR.

In action for wrongful death, although testimony of witness, who went to scene of wreck immediately, that deceased was not removed from wreckage until over 20 minutes later, when members of crew returned, was no part of the res gestæ, its admission was harmless under rule 62a (149 S. W. x), since the size of the verdict does not show passion or prejudice.

6. DEATH ⊂⟞⟝64 — ACTION — EVIDENCE — ADMISSIBILITY.

In action for death of adult son, evidence that son had stated that he was going away to work a few weeks for spending money, because he received no pay from plaintiffs, and that he intended to stay with plaintiffs, parents, until their death, was admissible on the issue of the parents' expectancy of future aid from the son.

7. DEATH ⊂⟞⟝64—ACTION — EVIDENCE—ADMISSIBILITY.

In suit by parents for death of adult son, evidence that the father was suffering with typhoid fever nine years before, from which he had never fully recovered, was admissible, since it showed that the father was in such condition as to require services of the son.

8. APPEAL AND ERROR ⊂⟞⟝907(2) — OBEDIENCE TO RULES—PRESUMPTION.

The evidence showing that intestate was on top of the train, it will be presumed on appeal, in the absence of evidence to the contrary, that he was there in obedience to a rule of defendant company requiring freight brakeman to be on the top of trains approaching stations, etc.

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Action by W. F. Hicks and wife against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

See, also, 166 S. W. 1190, 184 S. W. 1100.

Dinsmore, McMahan & Dinsmore, of Greenville, and Terry, Cavin & Mills and Jno. G. Gregg, all of Galveston, for appellant. B. Q. Evans and H. L. Carpenter, both of Greenville, for appellees.

HALL, J. This suit grows out of the death of appellees' son, who, while employed as a brakeman, was killed in the derailment of a freight train upon appellant's line of road, in the month of September, 1911. This is the third appeal in this case. The first trial resulted in a judgment for $5,500, and the second for $7,000. A remittitur of $3,500 was required by the trial court and entered in the last trial. Upon both appeals the judgments were affirmed upon condition that appellees would remit all but $1,100. Upon appellees' refusal to enter such remittitur, the judgments were reversed and remanded.

---

⊂⟞⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appellees alleged that the train upon which their son was employed was derailed and wrecked by the negligence of appellant in operating said train at a rapid and dangerous rate of speed over a track alleged to be defective; that if their son's death did not result from the negligence of appellant in this respect, then his death was caused by the negligence of defendant's train crew in abandoning and leaving him pinned and buried under the wreckage.

Appellant answered by general and special exception, general denial, and pleaded specially that the accident out of which the suit arose was not caused from any negligence of appellant company, but was occasioned by one of the ordinary incidents of that character of train service; that the deceased was violating one of the rules of appellant company in that he was riding on top of a box car when he should have been in the cab of the engine; and set up the defenses of contributory negligence and assumed risk. In a trial before a jury there was a verdict in favor of appellees in the sum of $2,750.

[1] Appellant urges, under the first assignment of error, that a verdict should have been instructed in its favor, since the evidence disclosed without dispute that appellees were financially independent; that they had no reasonable expectation of receiving pecuniary benefit from the deceased had he lived, and, on the contrary, all pecuniary benefits which would have been received would have been by the deceased from his parents. We have found no case where the question of financial condition of the plaintiffs in a suit of this character was held to be a bar to their right to recover for the death of an adult son. The sole inquiry has been whether or not, if deceased had lived, he would probably have contributed in a financial way to the benefit of his parents.

[2] The evidence shows at the time of the death of young Hicks his father was 65 years of age and his mother 63. It is further shown that he was the only child single and living with his parents; that they kept no domestic servants, and that he was active in the performance of the various duties in and about the farm. It is shown that the farm consisted of 100 acres in cultivation, and in addition to this there were several hundred acres in pasture land, upon which the father had a considerable number of live stock. His mother's health for several years before his death was not good, and it was shown that she had been in ill health for two or three years since; that his father was a sufferer from rheumatism and confined to his bed much of his time; that the son did most of the work in looking after the stock; that he assisted his mother in the dairy work, in milking from five to twelve cows, attending to the milk, shipping the cream, and was active in assisting his mother in her efforts to raise poultry for profit. It is further shown, by the testimony of neighbors and the family physician, that he nursed his mother and father, giving them medicine during their illness, and was attentive and affectionate in the performance of his duties, and had declared his intention of remaining with his parents permanently after his term of employment for several months with appellant company had expired. It was shown by uncontroverted evidence that his services in and about the farm, and in assisting his mother with her household duties, were reasonably worth the sum of $60 per month, and that he had been paid practically nothing for what he had done. Without detailing the testimony, suffice it to say that the evidence is sufficient to sustain the verdict in the amount rendered, had he lived and performed the services rendered by him prior to his death from September, 1911, to the date of the trial. The proposition under the second assignment, that there was and had been for a long time ill feeling between the father and son, is not supported by the record. It was shown that the father was in ill health and was irritable, and upon several occasions before his son's maturity there had been trouble between them, not of a serious nature, however; but the uncontradicted evidence was that, as the son grew older, he was more patient with his father, and that no animosity existed between them for some years prior to the death of the young man. W. T. Murdock for the appellee testified that very soon after the wreck the remainder of the train crew ran into Celeste upon the engine, leaving young Hicks in the wreck; that witness went to the scene of the wreck immediately after it happened, and over the objections of appellant testified as follows:

"I judge it was about twenty-five or thirty minutes—twenty, or somewhere in that neighborhood—before the other men returned that went away. I never timed them. While the train crew was gone we moved the brickbats and stuff from around him, and tried to cut some iron rods that had his legs between his ankles and knees, and could not cut them with an axe, and did not have any tools to cut the rods loose from him enough to get him out, and we did not get him out until they got back with some wrenches."

The objection made to this testimony is that it was immaterial and irrelevant.

[3] It was necessary for appellees to prove the death of their son in making out their case, and this evidence we think was part of the res gestæ, as this witness testified that he was upon the scene within a few minutes after the wreck occurred.

[4, 5] Whether it can be rightly considered as part of the res gestæ or not, young Hicks had been fatally injured, from which he died within a few minutes after he was extricated from the wreck; and, even if it is not properly part of the res gestæ, the amount of

the verdict does not indicate that its introduction had a prejudicial effect. It appears from the petition that plaintiffs had set up the fact of the abandonment of the wreck and their son as one of the acts of negligence. It does not appear from the record that this allegation was ever excepted to and the exception sustained, and we are authorized to conclude that the court properly admitted it under the pleadings. At any rate, since the size of the verdict does not show that it was the result of prejudice or passion, under rule 62a (149 S. W. x) the admission of the evidence, if error, is harmless. The same disposition is made of the assignment based upon the admission of the evidence of J. W. Bailey.

[6] By the eighth assignment appellant complains of the admission of evidence from Mrs. W. F. Hicks to the effect that young Hicks, in the spring of 1911, stated that he was going away to work a few weeks for spending money and extra clothes because he had never received any pay for his work on the farm; and the ninth and tenth assignments are based upon the testimony of Mrs. Hicks to the effect that her son had told her of his future plans, and that he did not intend to marry, but intended to stay with his parents until death separated them. We think this testimony was admissible upon the issue of the parents' expectancy of receiving aid from him in the future. St. L. S. Ry. Co. v. Huey, 61 Tex. Civ. App. 605, 130 S. W. 1017; G. C. & S. F. Ry. v. Brown, 33 Tex. Civ. App. 269, 76 S. W. 794.

[7] Appellant insists under the eleventh and twelfth assignments that the court erred in permitting Mrs. Hicks to testify that W. F. Hicks was suffering from an attack of typhoid fever nine years before, from which he had never fully recovered, and on account of which he was not mentally capacitated to attend to all of his business. It is held that testimony going to show the health, age, and condition of a parent in cases of this character is admissible. As stated before, it was shown that the son had devoted much time to nursing and caring for his father, and disclosed his willingness to render such services. This evidence showed appellee W. F. Hicks to be in such condition as required the services of his son. G. H. & S. A. Ry. Co. v. Davis, 4 Tex. Civ. App. 468, 23 S. W. 301; Texas Midland R. R. Co. v. Crowder, 25 Tex. Civ. App. 536, 64 S. W. 90.

Appellant further insists that the court erred in refusing to permit it to prove by its witness E. B. Mason, who had qualified as an expert, that it was safer for a man to ride in the cab of an engine than it was for him to ride on the top of a box car. If admitted, this testimony would not, as applicable to all cases, have been true. In the event of a head-end collision, or a derailment of the engine, which more frequently occurs, most any other place would have been safer than the cab of the engine. If the performance of his duties by deceased at the time of the wreck required his presence upon the top of the cars, clearly the evidence would not have been admissible. As briefed, the assignment does not show the relevancy of this testimony. We gather from the record that the accident occurred less than three miles from the station of Celeste. The burden, being upon appellant to show that his proper place was in the engine cab at that time, was not discharged, as shown by the assignment. Appellant's rule No. 418, governing employés, introduced by appellees, is as follows:

"Freight brakemen must be on top of their trains when approaching and passing stations, railroad crossings at grade, drawbridges, and when descending steep grades."

[8] The evidence having shown that young Hicks was on top of the train, in the absence of evidence to the contrary we must presume that he was there in obedience to this rule, and that some one or more of the conditions prescribed in the rule required his presence there rather than in the cab of the engine. The court did not err in overruling appellant's application for a continuance.

Finding no reversible error, the judgment is affirmed.