GULF, COLORADO & SANTA FE RAILWAY COMPANY V.
JOHN C. BROWN ET AL.

Decided October 17, 1903.

1.—Negligence—Discovered Peril—Fact Case.

Evidence considered and held to justify a finding that a locomotive engineer did not, on discovering the perilous position of a boy who was on a railroad bridge ahead, immediately make use of the means at his command to stop the train, and that his failure to do so was negligence which proximately caused the injury resulting in the death of the boy.

2.—Charge—Evidence as to Issues Withdrawn.

Where the charge submitted the case on the issue of discovered peril alone, and explicitly withdrew all other allegations as grounds of recovery contained in plaintiff's pleadings, the jury could not have been misled and have based their verdict on evidence relating to the issues so withdrawn, and error in the admission of such evidence was harmless.

3.—Verdict—Amount of Damages—Action for Death of Child.

A verdict for $5000 for negligently causing the death of a boy 12 years old, of good business capacity, and whose services during the opera season of each year were worth $50 per month, is held not excessive.

Appeal from the District Court of Johnson. Tried below before Hon. Wm. Poindexter.

*J. W. Terry* and *A. H. Culwell,* for appellant.

*S. C. Padelford* and *D. W. Odell,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted in the District Court by John C. Brown and wife against the Gulf, Colorado & Santa Fe Railway Company, to recover damages for the alleged negligent killing of their minor son, Herd Brown, while he was crossing the railroad bridge over East Buffalo Creek, in Johnson County. A trial resulted in a verdict and judgment for plaintiffs and defendant appealed.

*Conclusions of Fact.*—On April 22, 1902, Herd Brown, a minor, 12 years and 3 months old, with a companion, 17 years of age, was returning from a hunting trip to his home in the city of Cleburne, and while crossing the railroad bridge over East Buffalo Creek was run over and killed by one of defendant's trains. The boys were going north on the railroad track, and when they reached the railroad bridge they attempted to cross on the bridge, and while crossing, appellant's north-bound train, which was due at Cleburne at 6:55 p. m., ran upon and over the bridge and struck the boy, Herd Brown, and killed him. The officers and agents of defendant operating said train saw Herd Brown upon the bridge and discovered his peril in time, by use of the means at their command, to have stopped the train, or at least to have slackened its speed and have avoided the injury, and their failure to do so was negligence, which negligence was the proximate cause of the injury. Herd

Brown used due diligence after discovering the train upon the track to get off and was not guilty of contributory negligence. Appellees were the father and mother of said Herd Brown, and in deference to the verdict we find that by his death they have sustained damages in the amount found by the jury.

*Conclusions of Law.*—It is insisted that the verdict and judgment are contrary to and against the great preponderance of the testimony, and that for this reason the trial court erred in not granting defendant a new trial.

It is contended that the only evidence tending to show that the train could have been stopped sooner than it was is the testimony of the witness Garren, to the effect that a train going thirty-five miles per hour could be stopped within a distance of sixty or sixty-five feet, which evidence, it is insisted, is intrinsically absurd and false. We are of the opinion that, disregarding this testimony of Garren, there is evidence in the record which justified the jury in finding as they did upon this issue. The evidence shows that the railroad bridge is a skeleton bridge about 150 feet long, and that when Brown heard the train approaching he and his companion began to run. The engineer saw the boys when they began to run and discovered at that time they were in peril. He says the engine was then about 300 feet from the boys, and that he put the air in emergency and opened the sand lever and reversed the engine, which he says is all that he could do to stop the engine. There is other evidence tending to show that the engineer was much farther away from the boys than the distance stated by him when the boys began to run, and that the engineer did not apply the emergency brakes until the engine was actually entering upon the bridge. The engineer testified that a train running thirty miles an hour, as this one was, could have been stopped in 800 feet. There is evidence that the train did not stop until the hind coach was on the first street north of the bridge and that this street is over 400 feet from the bridge. The train was over 300 feet long, which would make the distance from where the engineer testified he first applied the emergency brakes, to where the engine actually stopped, over 1000 feet.

Joe Myers, who was with Herd Brown at the time he was killed, testified that they were about the middle of the bridge when their attention was first attracted by the engine. He says the engine was then about 300 yards from them. They started to run; that he got off the bridge by jumping, and that Herd Brown was about two feet ahead of him and about two feet from the north end of the bridge when the engine struck him. Thus, it would appear that had the engineer, immediately on discovering the peril of the boys, applied the emergency brakes, he could thereby have stopped the train, or at least have slackened its speed sufficiently to have given the boy time to get off the bridge. The evidence is sufficient to justify the jury in their finding that the engineer did not, on discovering the peril of Herd Brown, immediately

make use of the means at his command to stop the train, and that his failure to do so was negligence which proximately caused the injury resulting in the death of Herd Brown. We conclude that the appellant's first and second assignments are without merit.

The pleadings of plaintiff presented the issue that the bridge across East Buffalo Creek was within the limits of the city of Cleburne, a municipal corporation, and that there was in force within said city an ordinance which forbade engineers from running steam engines within the limits of said city at a greater rate of speed than six miles per hour, and said train was being run at a greater rate of speed than six miles an hour when Herd Brown was killed. That this bridge had been used by the people in and around Cleburne as a passway for more than twenty years, and that the public had been using said bridge as a passway over said creek. Under these pleadings the court admitted testimony to show where the boundary line of the said city of Cleburne was located with reference to this bridge, and also admitted said ordinance and testimony that for years before the killing of Herd Brown the bridge had been used as a public crossing.

The court submitted the case to the jury on the issue of discovered peril alone, and in the fourth paragraph of the charge specifically withdrew all other allegations as ground of recovery contained in plaintiff's pleadings. Appellant contends in its third asignment that the jury were misled, and that their verdict is based on evidence introduced on issues which had been withdrawn. We think the contention is without merit. Under the court's charge the jury were explicitly told that they could not find for plaintiff unless they believed that the employes of defendant in charge of said train saw Herd Brown upon said bridge, and saw that he was in danger of being run over by the engine in time to have slackened the speed of said engine, and avoid striking and injuring him by the use of all means at their command consistent with the safety of the train, etc., thus again expressly restricting the plaintiff's right to recover to the issue of discovered peril.

It was competent under the pleadings to admit evidence to show the southern boundary of the city of Cleburne. The effect of the charge was to withdraw this issue and the evidence admitted thereunder from the consideration of the jury. Had there been error in admitting the evidence, when the issue and evidence were withdrawn it became harmless. The above remarks dispose of assignments thirteen, fifteen and nineteen adversely to appellant.

The judgment was for $5000, and it is challenged as excessive. It was shown that Herd Brown was a boy 12 years and 3 months old. The plaintiff, John C. Brown, owned a one-half interest in the opera house at Cleburne, and during the opera season Herd looked after all the business of the opera house, looked after the fires, sold tickets, settled with the opera companies and looked after the opera house in general, and made money otherwise than working at the opera house. His father testified that during the opera season the services of Herd were worth,

and that he was actually earning, $50 per month. He was an intelligent, studious, industrious and money-making boy, and was very affectionate towards his mother and father; aided his mother around the home in making fires. She says his services to her were worth from $12 to $15 per month. In cases of this character the evidence can not furnish the measure of damages with that certainty and accuracy with which it may be done in other cases, and hence the amount must of necessity be left to the sound discretion of the jury, and their discretion will not be interfered with unless it is made to appear that it has been abused. Brunswig v. White, 70 Texas, 504; Taylor, B. & H. Railway Co. v. Warner, 88 Texas, 642, 31 S. W. Rep., 66; Railway v. Cullen, 29 S. W. Rep., 256, 30 S. W. Rep., 578; Southern Queen Mfg. Co. v. Morris, 58 S. W. Rep., 651; Myers v. State, 42 Cal., 215.

It does not appear there was any abuse of their discretion in this case, and the contention that the verdict is excessive is overruled.

The action of the court in refusing the charges requested by appellant, set out in the seventh assignment of error, presents no reversible error. The main charge fairly embraced the issue sought therein to have been submitted.

There was no error in admitting the evidence of the witnesses W. O. Brown and N. A. Adams, to the effect that the next day after the accident the engineer, Lee, stated to each of said witnesses in the city of Cleburne, in effect, that as he was approaching the bridge from the south he saw the deceased on the bridge, but thought he would get off. The contention is that this was an attempt to impeach the witness Lee upon an immaterial issue. Lee testified that at the time he saw the boys first he did not think they were on the bridge but believed that they were on the dump north of the bridge. The issue as to whether the boy was on the bridge at the time the engineer first saw him, or on the dump, was a material issue. The testimony of Brown and Adams tended to contradict Lee on this issue, and for this reason the evidence was admissible.

Nor was there error in admitting the testimony of the plaintiff, John C. Brown, and his wife Elizabeth, that prior to the deceased's death he had stated to both of them that it was his intention to always remain with them, and that he never intended to leave his mother and father as long as they lived. This testimony was admissible on the issue of damages. Railway v. Bonnett, 38 S. W. Rep., 813; Railway v. Lee, 70 Texas, 503.

The assignments of error not discussed have been carefully considered and are without merit. Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.