[No. 9694. Department Two. November 15, 1911.]

JOHN KANTON et al., Appellants, v. ALBERT KELLY, Respondent.[1]

APPEAL—REVIEW—CORRECT DECISION ON ERRONEOUS GROUND. A nonsuit granted upon an erroneous ground will be affirmed if correct upon any ground.

DEATH—DEATH OF CHILD—RIGHT TO RECOVER—"DEPENDENCE" OF PARENTS—EVIDENCE—SUFFICIENCY. Under Rem. & Bal. Code, § 183, providing that an action for death shall not abate if the deceased have parents dependent upon him for support, parents of a boy over nineteen years of age are not "dependent" upon him for support, although he gave them all his wages, three dollars a day, where it appears that they had accumulated considerable property, the father, forty-six years of age, had been engaged in a general teaming business with eight horses, which he sold out, and worked at days' labor, and that he was in good health and able to work, although he testified that he was out of a job and could not do physical work as well as he had formerly done.

DEATH—DEATH OF CHILD—RIGHT TO RECOVER—"DEPENDENCE" OF PARENTS—STATUTES—CONSTRUCTION. Under the acts of 1909 (Rem. & Bal. Code, §§ 183, 194), amending former laws which gave a right of action for wrongful death, and making the right of action in favor of parents depend upon the fact that they were dependent upon the deceased for support, without reference to the age of the child, there can be no recovery by parents for the death of a minor son, in case there is no dependence, absolute or partial, although they were receiving his wages, and under the construction of former laws the parents might have maintained an action for loss of services.

[1]Reported in 118 Pac. 890.

SAME—"DEPENDENCE" OF PARENTS—PROMISE OF SUPPORT. The promise of a son to remain with and support his parents does not create a liability for wrongful death, under the statute making dependence of the parents for support a condition precedent to the right of action.

Appeal from a judgment of the superior court for King county, Albertson, J., entered March 28, 1911, upon granting a nonsuit, after a trial before the court and a jury, in an action for wrongful death. Affirmed.

*John E. Humphries* and *Geo. B. Cole*, for appellants.

*Farrell, Kane & Stratton*, for respondent.

CHADWICK, J.—This appeal is prosecuted from an order of dismissal entered upon a challenge to the evidence. Michael Kanton lost his life while in the employ of the respondent, and his parents brought suit to recover damages under the act of 1909, Rem. & Bal. Code, § 183, which extended the right to recover damages for the death of any person to his dependents. The parts of the statute which are material to our inquiry follow:

"No action for a personal injury to any person occasioning his death shall abate, nor shall such right of action determine, by reason of such death, if he have a wife or child living, or leaving no wife or issue, if he have dependent upon him for support . . . at the time of his death, parents, sisters or minor brothers."

Although the trial judge entered his judgment upon the theory that no negligence had been shown, and although we are not agreed as to the correctness of that ruling, we think that the judgment must nevertheless be sustained, for the reason that the parents of the deceased, these plaintiffs, were not in fact dependent within either the letter or spirit of the law. Having no concern, then, for the particular reasons assigned for the judgment (*Kane v. Dawson*, 52 Wash. 411, 100 Pac. 837), but only for a correct determination of the controversy, we shall proceed to review the testimony relied upon by appellants to sustain their cause of action.

Deceased was over nineteen years of age, unmarried, and was, at the time of his death, earning three dollars per day. He gave all of his earnings to his parents. He had been at work for four or five years before his death. The father, who is forty-six years of age, swears that he had had but little work after the first of January preceding the trial in April; that he could not do physical labor as he had formerly done, for the reason that it was hard for him to straighten up after bending over; that he had some trouble in his back. This is about the sum of the testimony going to show dependence. On the other hand, the testimony shows, that the family had lived in Seattle for eleven years; that they had accumulated considerable property; and that they owned a house and lot on Beacon hill. If the testimony shows the rental value of the house, we have overlooked it, but the barn brings a rental of $20 a month. They have a home in Rainier valley, consisting of two lots, a five-room dwelling house, and a barn. A stall is rented in the barn and brings in ten dollars a month. They also own two lots on Genesee street. The value of this property is uncertain. Prior to the present slump in real estate values, property situated in the immediate neighborhood of the Rainier valley property was held at $2,000 a lot. Plaintiffs had listed the Genesee street property at $1,250 for the two lots. The value of the Beacon hill property plaintiff himself refuses to estimate, but it is certain that, but for the present depression in real estate values, the property would be worth four or five thousand dollars, and in time would undoubtedly be worth very much more. Plaintiff John Kanton worked five and a half years in a sand pit, and then went into business on his own account. He owned one four-horse team and two two-horse teams, with wagons, and carried on a general teaming business. About two years ago he sold his teams and went to work with pick and shovel on the street. Thereafter he worked for the Moran Company, until he was laid off about the first of the year. His wages when doing outside work were two dollars

and a half a day. He has made some effort to get work since the first of the year, but says he has been unable to find employment. He is willing to work if he can find work to do, but in his testimony he also says that he has not been looking for a job. He has never consulted a physician in his life, and, according to his own evidence, the only occasion he has ever had to come in contact with a medical man was when joining some lodge.

From this review of the evidence—and we think a fair statement has been made—it will be seen that the case clearly falls within the rule of *Bortle v. Northern Pac. R. Co.*, 60 Wash. 552, 111 Pac. 780, where we said:

"While we would not give it such a strict construction as to say it means wholly dependent, or that the parent must have no means of support or livelihood other than the deceased, such a construction being too harsh and not in accordance with the humane purpose of the act. Nevertheless, there must be some degree of dependency, some substantial dependency, a necessitous want on the part of the parent, and a recognition of that necessity on the part of the child."

The general rule, as stated in 8 Am. & Eng. Ency. Law, p. 904, is then quoted.

Dependence, within the meaning of the statute, is not to be measured either by physical inability to make a living, mental incapacity, or incompetency to successfully carry on business in its generally accepted sense. A man may be lacking in one or more of these qualifications and still be independent of the charity or assistance of others. We find it to be so in this case. Granting that the surviving father now finds it harder to do physical labor than formerly, it cannot be held, as a matter of law, that a man forty-six years of age, who has sufficient business capacity to accumulate a share of property equal to or greater than the acquisitions of the average man, who has successfully carried on a teaming business, and who is practically out of debt, and but for the stress of the immediate times would no doubt find employment, is a dependent. As said in the *Bortle* case, there

must be a substantial need on one side and a substantial financial recognition of that need on the other side, to make out a case of dependency within the meaning of this statute. No such necessity is here shown. If the deceased turned over all his earnings to his parents, the record raises a more probable inference that it was in keeping with the old country custom of parents taking the earnings of their children. In any event, it is certain that the earnings of the deceased went, not to meet any real necessity, for there was none, but to increase the general prosperity of the family.

Appellants insist, however, that they are entitled to recover for the loss of the society of their son. They quote and rely upon a part of Rem. & Bal. Code, § 183: "In every such action the jury may give such damages, as under all the circumstances of the case may to them seem just." The right of recovery in this class of cases is statutory. Under Bal. Code, § 4828, as construed in *Hedrick v. Ilwaco R. & Nav. Co.*, 4 Wash. 400, 30 Pac. 714, an action might have been maintained for the loss of services of a child. It is there said:

"A parent at common law could maintain an action for damages for loss of services of his minor child from the time of the injury until death, where death did not immediately follow the injury; and the object of the statute is to create a new and independent right of action for the loss of services subsequent to the decease of the child, which did not exist at common law."

The legislature, at its 1909 session, not only amended § 4828, but also § 4838, Bal. Code (Laws 1909, pp. 425, 566) ; and in doing so made the right of recovery to depend on the dependence of the parents without reference to the age of the deceased child. So that, whichever statute (§ 183 or § 194, Rem. & Bal. Code), is taken as controlling, there being no common law right of action, the dependence of the parents is a condition precedent, without which no action lies.

Appellants rely upon the following cases: *Mehan v. Lowell*

*Elec. Light Corp.*, 192 Mass. 53, 78 N. E. 385; *Mulhall v. Fallon*, 176 Mass. 266, 57 N. E. 386, 79 Am. St. 309, 54 L. R. A. 934; *Boyle v. Columbian Fire Proofing Co.*, 182 Mass. 93, 64 N. E. 726; *Central of Georgia R. Co. v. Henson*, 121 Ga. 462, 49 S. E. 278; *Daniels v. Savannah F. & W. R. Co.*, 86 Ga. 236, 12 S. E. 365. These cases go no further than to hold that the dependence does not have to be absolute, but that partial dependence is all that is required. This rule is announced in the *Bortle* case. But in each of the cases relied on there was a necessity shown, a condition, such as age, infirmity, or sickness in the family, which without the contribution of the child would have left the parent unable to sustain himself in his then station in life, or would at least have rendered his future comfort problematical.

The frailty of their case, when considered in the light of the *Bortle* case, must have occurred to appellants, for they have sought to show that it was the intention of the deceased to remain with and support them during the remaining years of their life. The father said:

"Q. What, if anything, did he say to you about going to take care of you in the future? A. Yes, he says—I speak to him the day we see in the paper—I and my wife and the neighbors went there—I see in the paper boys run away in California, you see, there, and he was getting hurt, and so we speak to him, says, 'Mike'—and some other boy, the man speak to his boy the same, he says, 'You do the same, run away and leave father and mother alone and all the people have nothing to live on?' He says, 'No, I never leave father and mother so long as you live'—that is the boy—both of them said so—Mike."

The mother testifies:

"My boy was right all the time and he bring all the money home to me and say he likes papa and mama and he never goes away from papa and mama so long as they will last."

Other witnesses testified as follows:

"Q. And now when was it that he told you he was willing to support his father and mother as long as they lived, and

that he was going to stay with them? A. Well, he came over one evening to the house, he started in to talking and you know how them boys run away once in a while, and I asked him, I says, 'Mike,' I says, 'you intend to skip out too some day?' He said, 'No, sir,' he said, 'I have got to stay with them so long as they live and support them.' . . . Q. Did Michael ever tell you what he was going to do? A. Yes. Q. What did he say? A. He said he would stay with his father and mother, he wont run away. That is all. Not know more . . . Q. What did Michael tell you about his going to support his father and mother? A. No, no go. Q. What? A. Stay by father and mother. Q. What did he say? A. He was every time work for the father and mother and no go from father and mother so long they live. . . . Q. Did you ever have any conversation with him as to what he was going to do in relation to his father and mother? A. Well, he told me all the time, he says he going to stay with his father and mother all the time, that his old folks living and he is living, he said, he stay all the time. . ."

The right of recovery in this class of cases depends upon a condition, and not upon a promise, if it may be so called, made by the deceased—a promise that has been made by all boys from the time they were old enough to fashion their affection into words, and repeated until the course of nature leads them from the family roof tree to set up an establishment of their own. Such utterances are not evidence of anything, unless they have something to operate on. Upon a showing of dependence, absolute or partial, such words may be considered in connection with the natural impulse which prompts every child to shield a parent from the wants and perils of age. A child might indeed remain with and, in a sense, care for his parents in old age, and yet they might not be dependents in the sense in which that term is used in the law. It is a pretty sentiment, but no one is deceived by it but the child, and his deception is usually short-lived.

"According to the appellant's theory, the mother and son are supposed to live on together to an indefinite age; the one craving sympathy and support, the other rendering reverence, obedience, and protection. Such pictures of filial piety

are inestimable moral examples, beautiful to contemplate, but the law has no standard by which to measure their loss." *Agricultural & M. Ass'n etc. v. State*, 71 Md. 86, 18 Atl. 37, 17 Am. St. 507.

To sustain the statement of deceased that he intended to remain with his parents and care for them as long as they lived, appellants rely upon the case of *Gulf, C. & S. F. R. Co. v. Brown*, 33 Tex. Civ. App. 269, 76 S. W. 794. In that case a boy twelve years and three months old was killed. The parents owned a half interest in an opera house, and during the opera season the boy built fires and sold tickets and looked after the opera house in general, and made some money outside. The father testified that his services were worth $50 a month. Such statements do not make a condition, but must be considered in the light of all the circumstances of the case. That such testimony may be relevant there can be no doubt, but its relevancy depends, not upon the statement, but upon the conditions to which it is made to apply. The *Brown* case just cited is not consistent with reason, nor is it sustained by the authorities upon which it is made to rest. *Galveston, H. & S. A. R. Co. v. Bonnett* (Tex. Civ. App.), 38 S. W. 813; *Missouri Pacific R. Co. v. Lee*, 70 Tex. 496, 7 S. W. 857. In the *Lee* case the age of the deceased is not given, but he was a farm hand who lived with his widowed mother. She was without means, but rented land and depended upon the labor of her son and upon his counsel and advice in the conduct of her business. In the *Bonnett* case the deceased was twenty-two years of age, and was a contributor to the support of his parent who had "no money, but little property, and was very poor." In the last two cases we think the testimony would be admissible. It will be noticed that the three decisions relied upon were announced by the courts of Texas. They cannot, in any event, be taken as authority in construing our statute, for in that state a right of recovery for death caused by the negligence of a carrier is absolute and is not given upon

the condition of dependency. The testimony was received, not to establish the right of recovery, but as going to the measure of damages. *Gulf, C. & S. F. R. Co. v. Brown, supra.*

There is no right of recovery. Judgment affirmed.

DUNBAR, C. J., MORRIS, CROW, and ELLIS, JJ., concur.

### ON PETITION FOR REHEARING.

[Decided March 12, 1912.]

PER CURIAM.—It is the custom of the daily newspapers to announce the result of cases brought to and decided by this court. The affirmance of the judgment in this case was so announced, and immediately upon such publication, before the decision had been published, a petition for rehearing was sent to each member of the department announcing the judgment. It is said:

"If the report of the decision in the public press is correct, then this court has overlooked section 184, Rem. & Bal. Anno. Codes & Statutes of Washington."

Section 184 is then quoted. This statement, coming as it did and with no knowledge on the part of counsel as to the text of our decision, calls for a brief statement of the history of this case. As a premise, however, let us say, if it be admitted that plaintiffs have an action under § 183, Rem. & Bal. Code, and also under § 184, they could not, from the very nature of things, pursue both remedies. Hence, the adoption of one is, under all authority, a waiver of the other, so far as the particular action is concerned. The reason is obvious. Under § 183, if dependency is the basis of recovery, the measure of damage is greater, very much greater, than it would be under § 184. Under § 183, it is not limited, nor is the allowance to be measured by an arbitrary time limit. Under § 184, the recovery for services does not extend beyond the time when the child becomes of age. In this case, plaintiffs voluntarily selected their remedy; and if, at

the time the complaint was drawn, counsel had § 184 in mind at all, they adopted the theory which would bring the greatest return in money. Then, too, the defense would be entirely different. Under § 183, the question of dependency is the paramount issue. Under § 184, aside from the issue of contributory negligence, the emancipation of the child would be about the only defense that could be set up.

Now, are the plaintiffs entitled to urge, on rehearing, that they are entitled to a recovery under § 184? The right of recovery is alleged to be, "that the plaintiffs, the parents of said Mike Kanton, were dependent upon the said Mike Kanton for support and maintenance." (Complaint, Par. 13.) The whole of their testimony, some of which is quoted in the opinion, was put in to sustain proof of dependency; whereas, if they had been seeking to recover under § 184, the whole of it would have been immaterial and irrelevant to the issue. The court below held against plaintiffs, and their counsel filed a brief in which it is said: "This action is prosecuted under § 1, page 425, Laws of Washington, 1909, set out in Rem. & Bal. Code, § 183." Counsel then cites the case of *Hedrick v. Ilwaco R. & Nav. Co.*, 4 Wash. 400, 30 Pac. 714. Neither that case nor § 184 was referred to in the brief, nor mentioned in oral argument. It occurred to the writer of the opinion that the bar might consider that this case could be sustained by reference to the *Hedrick* case, which is based on and construes § 184. We took occasion, upon our own initiative, to refer to it in our opinion. So that the assertion that the court overlooked § 184, Rem. & Bal. Code and the *Hedrick* case is, considering what we have herein set forth, a gratuitous affront to the patience and industry of the court. If a court overlooks that which is called to its attention, it is subject to criticism. But if, in its desire to do justice, it mentions that which has been concealed, or that which the record does not reveal, the fault is not with the court. Section 184 was either overlooked by counsel or purposely held in the dark until the decision was

announced.    Moreover, the allegation in the petition for rehearing:

"It is alleged in the complaint, and admitted on the trial, that Michael Kanton was an infant of the age of nineteen years, that all his earnings were given to his father and mother, that he had never been emancipated, consequently they were entitled to his wages,"

is, in so far as it says that it is alleged or was admitted that Michael Kanton had never been emancipated, untrue.    It is not only not founded upon anything in the record that would imply that issue, but is negatived by the complaint, answer, reply, testimony, briefs and oral argument.    We have decided the case plaintiffs' counsel brought to this court, and decided it rightly as the law is written by the legislature of this state, and for the reasons stated in the department opinion and herein stated, we adhere to our former ruling.

It is insisted that our decision conflicts with the case of *Tecker v. Seattle, Renton & Southern R. Co.*, 60 Wash. 570, 111 Pac. 791.    The statutes and the amendments of 1909 were not considered in that case.    The only questions there raised were of negligence and contributory negligence.

In passing, we desire to say that, whether a right of action might have been maintained under § 184, we do not decide. That question is not before us.

FULLERTON, J., concurs in the result.