[No. 20667.   Department Two.   August 23, 1927.]

VERA GRANT, *as Administratrix of the Estate of Dorothy Grant, Deceased, Appellant,* v. LIBBY, McNEILL & LIBBY *et al., Respondents.*[1]

[1] DEATH (13, 14)—PERSONS ENTITLED TO SUE—BENEFICIARIES—DE-
PENDENCY. An action for wrongful death under Rem. Comp.
Stat., § 183, must, under Id., § 183-1, be for the benefit of the
relatives named who may be dependent upon the deceased for
support, and is properly dismissed for want of proof of de-
pendency, where a mother, capable of supporting herself and
two minor daughters, brought action for the death of a daugh-
ter fourteen years of age, who had contributed but five or six
dollars to the support of the family and was incapable of earn-
ing sufficient for her own support.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered March 1, 1926, upon granting a nonsuit, after a trial before the court and a jury, in an action for wrongful death. Affirmed.

*Geo. H. Mullins (Thos. H. Wilson, of counsel),* for appellant.

*T. L. Smart* and *Grady & Velikanje,* for respondents.

HOLCOMB, J.—This is an action by her administratrix, as personal representative of the deceased, Dorothy Grant, a minor, against Libby, McNeill & Libby, a corporation, E. S. Lueth, electrical inspector of Yakima, and the American Surety Company, a corporation, the surety on his official bond, for damages for the death of the minor by reason of alleged negligence on the part of respondents.

At the close of the evidence for appellant, a motion for a nonsuit was made by respondents, upon the two

[1]Reported in 258 Pac. 842.

grounds: That no negligence was shown on the part of any of respondents, and that no dependence was shown upon the part of the mother of the minor.

The trial judge granted the motion for a nonsuit wholly upon the latter ground.

Mrs. Vera Grant, the mother, had been deserted by her husband, something over two years before the death of Dorothy. There were two daughters, Dorothy, aged fourteen and one-half years at the time of her death, and Winifred, aged ten. Mrs. Grant was of the age of thirty-four years. She had lived at Prosser, Washington, for a year or two, prior to May, 1924. Her mother also lived at Prosser. Mrs. Grant received no aid whatever from the husband, who had deserted her and from whom she had obtained a divorce, towards the support of herself and her two daughters. Mrs. Grant had no occupation and little schooling, and was compelled to support herself and daughters by domestic service and by seasonal occupation in orchards and truck farms. Dorothy was shown to be a very affectionate daughter and a very bright scholar. It was her intention and desire to finish high school and to become a stenographer and assist in the support of her mother and Winifred.

In May, 1924, Mrs. Grant went to Yakima and obtained employment in the cannery of Libby, McNeill & Libby. She left Dorothy in school at Prosser, until the school term should close, at which time Dorothy came to her at Yakima. Mrs. Grant had only about ten dollars in money and no property, and, upon obtaining employment at the cannery, she rented a tent from Libby, McNeill & Libby, paying therefor one dollar a week as rental. For that rental, the company furnished electricity for light and small household purposes in the tent.

On June 14, 1924, Dorothy, who was sitting in the rented tent, was electrocuted during a storm, it being alleged that the electric wiring system of Libby, McNeill & Libby was defective and that the stroke of lightning was conducted into the tent, and caused the death of Dorothy, by reason of defective wiring. We shall not notice the allegations and proofs as to negligence on the part of the company and of Lueth, as electrical inspector, for the reason that we have arrived at the same conclusion arrived at by the trial judge, and are no more concerned with the question of negligence than was he.

[1] The evidence introduced by appellant, and relied upon to sustain her right to recover for the death of Dorothy, is, in substance, this: Appellant was only able to work at what she could do with her hands, and supported herself and two children by that work, together, also, with help from her mother. Dorothy had, at four or five times, while in school in Prosser, taken care of young children for families in their neighborhood who desired to be away from their homes of evenings, and received therefor a dollar or a dollar and a half an evening, which money she delivered to her mother. Dorothy had completed her second year of high school. She had expressed an intention to stay with her mother and sister and help provide for them. When she came to her mother at Yakima and obtained employment in the cannery, she earned twenty cents at some work there, which she gave to her mother; later, when strawberries came in, she earned three dollars and twenty-five cents for four days' work, which she gave to her mother; and later three dollars, which was paid her mother by the company after her death.

It will thus be seen that, while in Prosser, on four or

five occasions, for taking care of children she earned five dollars or six dollars, and that, after coming to Yakima, she earned a total of six dollars and forty-five cents, which was given to her mother as contributions towards the support of herself, Winifred and her mother.

In passing upon the motion, the trial judge said:

"The court has concluded to grant the motion of the defendants for a nonsuit in this case. I do so upon the ground and for the reason that I believe in 60 Wash. (552), in the *Bortle* case, the court there lays down the rule that must be followed. Under section 183 of the Code the amount of recovery is the support which the child would have given to the parent, had it continued to live, but, under my interpretation of the *Bortle* case, it means that, before any recovery at all can be had, it must first appear that a necessitous condition must exist on the part of the mother. I think the evidence here wholly fails in that regard. The evidence shows that this woman, according to her own testimony, is not only able and capable of working, but she admits that she was considered an exceptionally fast worker, which would entitle her to more than average compensation for work at the cannery where she was then employed. I think this evidence of necessitous condition on the part of Mrs. Grant is wholly lacking in this case.

"While it is true she may have been necessitous at times, earning for the two minor children dependent upon her for support, if that element is excluded, I think it very apparent that Mrs. Grant is as well qualified and able as to strength and endurance to maintain herself more decently than she has for several years last past. . . .

"    . . . The most that can be said for it is, that it depends entirely upon the expectation and hopes expressed by a fourteen year old girl as to what she expected to do when she grew up. Suppose she had grown up and suppose she had become a supporting factor, still, all other things remaining the same, the

mother would not be in necessitous circumstances
. . ."

It may also be added that the evidence shows that
Mrs. Grant received more frequent contributions from
her mother, in the support of herself and her children,
than she did from Dorothy.

Appellant endeavors to distinguish the *Bortle* case
(*Bortle v. Northern Pac. R. Co.*, 60 Wash. 552, 111
Pac. 788), cited and relied upon by the trial court, upon
the grounds that, in that case, the deceased was twenty-
five years of age and had for some years been work-
ing away from home at various occupations, coming
home a few days each year; that the father was fifty-
five years old and the mother fifty-one, and had an-
other son twenty-eight years old, who was working on
a ranch, and a daughter sixteen years old, who lived
away from home and worked for her board while go-
ing to school; that the father's health was not good,
preventing him from doing hard manual labor, his
average income for some time past being only forty
dollars a month, out of which he supported himself
and wife, who was also in bad health and under a
doctor's care; that the father and mother could give
no definite statement as to when and how much the
deceased contributed to their support, other than that
it was somewhere around one hundred dollars a year;
that they were unable to state at what times they had
called on the sons or how they had responded; that
from these facts nothing is shown in the *Bortle* case
more than occasional gifts bestowed upon the parents
with no thought of dependency or of contributing be-
cause of necessity. It is then asserted that, in this
case, deceased was fourteen and one-half years of age,
residing at home with her mother, working at the can-
nery; that the mother was thirty-four years of age,

and had another daughter ten years of age, living at home with her; the father had deserted the family, some two years before the casualty, leaving to the care of the mother the two daughters, and during that time had contributed absolutely nothing to their support; that the mother had, in her struggle to support herself and family while living at Prosser, Washington, worked in fruit orchards and at domestic service, sending her two daughters to school; that Dorothy, the deceased child, sometimes earned some money, which she used for school supplies and clothes; that Mrs. Grant's mother, the grandmother of the children, also during this time assisted the mother with money and clothes and other necessities for the mother and the two children.

It is perfectly obvious that the contributions of Dorothy from her earnings up to the time of her death were not sufficient to support herself and were very inconsequential in the support of herself and mother and sister.

The principle was stated in the *Bortle* case, *supra,* that under the statutes under which this action is brought, Rem. Comp. Stat., §§ 183, 183-1 [P. C. §§ 8259, 8260], there must be a substantial dependency upon the part of the parent for support at the time of the death of the child. In that case we said:

"While we would not give it [meaning this phrase] such a strict construction as to say it means wholly dependent, or that the parent must have no means of support or livelihood other than the deceased, such a construction being too harsh and not in accordance with the humane purpose of the act. Nevertheless, there must be some degree of dependency, some substantial dependency, a necessitous want on the part of the parent, and a recognition of that necessity on the part of the child.''

We quoted from *Duval v. Hunt,* 34 Fla. 85, 15 South. 876, with approval, as follows:

"We think that when the suit is brought by a person who bases his right to recover upon the fact that he is dependent upon the deceased for support, then he must show, regardless of any ties of relationship or strict legal right to such support, that he or she was either from the disability of age, or non-age, physical or mental incapacity, coupled with the lack of property means, dependent in fact upon the deceased for a support. There must be, when adults claim such dependence, an actual inability to support themselves, and an actual dependence upon some one else for support, coupled with a reasonable expectation of support or with some reasonable claim to support from deceased."

Sections 183 and 183-1, *supra,* have been construed by this court in *Kanton v. Kelly,* 65 Wash. 614, 118 Pac. 890, in which the same factor of dependence was also interposed—that of anticipated future dependence —but we said:

"The right of recovery in this class of cases depends upon a condition, and not upon a promise, if it may be so called, made by the deceased—a promise that has been made by all boys from the time they were old enough to fashion their affection into words, and repeated until the course of nature leads them from the family roof tree to set up an establishment of their own. Such utterances are not evidence of anything, unless they have something to operate on. Upon a showing of dependence, absolute or partial, such words may be considered in connection with the natural impulse which prompts every child to shield a parent from the wants and perils of age. A child might indeed remain with and, in a sense, care for his parents in old age, and yet they might not be dependents in the sense in which that term is used in the law. It is a pretty sentiment, but no one is deceived by it but the child, and his deception is usually shortlived. " ' . . . Such pictures of filial piety are inestimable moral examples, beautiful to contemplate, but

the law has no standard by which to measure their loss.' ''

As to the *Kanton* case, appellant contends that the writer of the opinion, Chadwick, J., stated that the case was one under § 183, and immediately sets out a portion of §194, [P. C. § 8275], so that the *Kanton* case cannot be considered in this case as controlling.

It is true that the writer of that opinion stated that the action was one under § 183, and then quoted part of § 194 as the statute material to the inquiry; but in the course of the opinion it was said:

"So that, whichever statute (§ 183 or § 194, Rem. & Bal. Code) is taken as controlling, there being no common law right of action, the dependence of the parents is a condition precedent, without which no action lies."

It must be remembered that the action is a statutory one, created by § 183, and not a common law action, and the beneficiaries defined by § 183-1 (Amendment, Laws of 1917, p. 495, § 2). There must be a right of action under § 183 and beneficiaries as defined by § 183-1. The beneficiaries must be dependents, must be wholly or in part dependent upon the deceased, and the dependency based upon a condition, and not upon a promise.

Appellant also inferentially criticizes the decision in the *Bortle* case by attempting to distinguish the cases cited and relied upon in it, to show that they did not fully sustain the holding in that case, or do in fact support the contention of appellant. There are distinguishing features and distinguishing statutes in several of the cases cited. The principle announced in most of them, however, was the principle laid down in the *Bortle* case.

We think probably we should hold, as in *Houlihan v. Connecticut River R. Co.*, 164 Mass. 555, 42 N. E. 108,

that, where a person was dependent upon several persons, all of whom contributed to that person's support, and one of them was removed by the wrongful or negligent act of another, such person was a dependent to the extent that the deceased contributed to his support. In other words, one of the means of support which was necessary was removed. But that is not this case. In this case, the deceased was more dependent upon the mother than the mother upon the deceased. The deceased had contributed but little or nothing to the support of the mother and family. She had not even contributed sufficient to provide for her own support.

We are convinced that the judgment of the trial court was right, and it is affirmed.

MACKINTOSH, C. J., FRENCH, PARKER, and TOLMAN, JJ., concur.