[No. 26064. *En Banc.* August 16, 1937.]

JACK EPLEY *et al., Minors, by Ernest Epley, their Guardian ad Litem, Appellants,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*Phil K. Eaton* and *Harry Ellsworth Foster,* for appellants.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

HOLCOMB, J.—Hazel Epley, while engaged in an employment defined under the workmen's compensation act as extrahazardous, sustained injuries from which she died. She left two children, Jack and Marie, under sixteen years of age. Their father, Ernest Epley, having been appointed guardian, made claim for compensation in their behalf to the department of labor and

[1]Reported in 70 P. (2d) 1032; 73 P. (2d) 521.

industries. The supervisor denied the claim on the ground that the claimants did not come within the terms of the act. Application to the joint board for rehearing was denied for the same reason. Appeal was taken to the superior court of Thurston county. The court sustained the ruling of the department and entered judgment dismissing the appeal. From the judgment so entered, claimants appeal.

The section of the statute upon which the claim is predicated is Rem. Rev. Stat., § 7679 [P. C. § 3472] (a) (1), which reads as follows:

"If the workman leaves a widow or invalid widower, a monthly payment of thirty-five dollars ($35.00) shall be made throughout the life of the surviving spouse, to cease at the end of the month in which remarriage shall occur, and the surviving spouse shall also receive per month for each child of the deceased under the age of sixteen years at the time any monthly payment is due the following payments: For the youngest or only child twelve dollars and fifty cents ($12.50), for the next or second youngest child seven dollars and fifty cents ($7.50), and for each additional child five dollars ($5.00): Provided, That in addition to the monthly payments above provided for, a surviving widow of any such deceased workman shall be forthwith paid the sum of two hundred and fifty dollars ($250.00)."

It was the contention of the respondent and the view of the trial court that, when a woman worker comes to her death in consequence of injuries sustained in an extrahazardous employment, leaving children under sixteen and a husband who is *not* an invalid, the children are not entitled to compensation. An analysis of the statute alone gives much support to this position. But since the judgment was entered in the court below, this court has rendered a decision which we think necessarily implies a different construction of the section under consideration. *Anthony*

*v. National Fruit Canning Co.,* 185 Wash. 637, 56 P. (2d) 688. In that case, a woman worker died from injuries sustained while she was engaged in an extra- hazardous employment. Her husband was appointed administrator of her estate. As such, he brought an action against the employer, under the wrongful death statute, for the benefit of himself and four chil- dren under sixteen years of age. Demurrers to the complaint were sustained, and judgment was entered dismissing the action. On appeal, the judgment was affirmed. The question presented was stated as fol- lows:

"Where a woman workman dies as a result of injury in extrahazardous employment, can the minor children and the surviving husband, who is not an invalid, maintain an action under the wrongful death statute against the employer, through the personal representa- tive of the deceased workman?"

Disposing of the question, the court said:

"There is nothing in the pleadings or the judgment in this case as to whether the widower is an invalid. The act granting a right to recover damages for the death of a person, caused by the wrongful act, neglect or default of another (Session Laws 1917, p. 495, Rem. Rev. Stat., §§ 183, 183-3 [P. C. §§ 8259, 8263]) was not intended to repeal or supersede any part of chapter 74, Laws of 1911, p. 345, the workmen's compensation act. Section 5 of the 1917 act, p. 496, says:

" 'This act shall not repeal or supersede chapter 74 of the Laws of 1911 and acts amendatory thereof, or any part thereof.' Rem. Rev. Stat., § 183-3 [P. C. § 8263].

"In the present case, according to the allegations of the second amended complaint, we are considering and dealing with an injury consisting of a 'sudden and tangible happening of a traumatic nature producing an immediate or prompt result, and occurring from without, and such physical condition as results there- from,' which is the meaning of the word 'injury' in

the workmen's compensation act, as the act was amended, Laws 1927, p. 818, § 2; Laws 1929, p. 325, § 1; Rem. Rev. Stat., § 7675 [P. C. § 3470]. This kind of injury falls within the scope and purpose of the workmen's compensation act, according to uniform decisions."

While § 7679 (a) (1) was not specifically mentioned or discussed in the opinion, it was the only section under which the Anthonys could have had relief under the workmen's compensation act. It seems too plain for argument that the theory upon which they were denied relief in their action for wrongful death was that their remedy was to be found in the compensation act.

Furthermore, we there said:

"The right of action and the remedies formerly available under the factory act, in cases such as the one alleged in the second amended complaint in this action, have been superseded by the workmen's compensation act. Appellant has no right of action under the factory act."

To reverse our decision in the *Anthony* case, *supra,* would create an anomalous situation which would be indefensible.

In *Roswall v. Grays Harbor Stevedore Co.,* 132 Wash. 274, 231 Pac. 934, we decided that the workmen's compensation act abolished the remedy of the death statute

". . . only in those causes falling within the scope of the act . . . not those wherein it does not afford a complete remedy for both the employer and the employee."

In the case at bar, claimants are asking for the very relief to which the Anthonys were relegated in that action. If we now hold that claimants can have no relief under the workmen's compensation act, we must say that the children of a woman worker, killed in an

extrahazardous employment, have no remedy at all unless they also happen to be so unfortunate as to have an invalid father. To so hold, we would have to ignore, not only the maxim that there can be no wrong without a remedy, but also the spirit of the workmen's compensation act, which is, by specific declaration, designed to provide *"sure and certain relief for workmen, their families and dependents."*

The theory upon which the act was originally held constitutional was that sure and certain relief was substituted for the remedies which were abolished. *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466.

We conclude that the claimants in this proceeding come within the purview of Rem. Rev. Stat., § 7679 (a) (1).

The judgment is reversed, and the cause remanded with directions to refer the claim back to the department for further proceedings.

MAIN, GERAGHTY, and BLAKE, JJ., concur.

MILLARD, J. (specially concurring)—In *Anthony v. National Fruit Canning Co.,* 185 Wash. 637, 56 P. (2d) 688, the question there presented was whether, where a woman workman dies as a result of injury in extrahazardous employment, her minor children and the surviving husband, who was not an invalid, could maintain an action under the wrongful death statute against the employer. We held in effect that, while a right of action could not be maintained under the wrongful death statute against the employer, the minor children were entitled to compensation under the workmen's compensation act.

Did we mean to be ironical when we so held? Was the meaning intended contrary to the meaning seemingly expressed? Did we say one thing and mean

the opposite? Having so lately written language into the workmen's compensation act which affords the relief now sought by the appellants, we should not write that language out of the statute unless we preserve to the appellants the right of recovery under the wrongful death statute. I am bound by the holding in *Anthony v. National Fruit Canning Co., supra;* therefore, I concur in the result of the opinion written by HOLCOMB, J.

TOLMAN, J. (dissenting)—As stated in the prevailing opinion, the claim in this case is predicated on Rem. Rev. Stat., § 7679 [P. C. § 3472] (a) (1), which reads as follows:

"If the workman leaves a widow or *invalid widower,* a monthly payment of thirty-five dollars ($35.00) shall be made throughout the life *of the surviving spouse,* to cease at the end of the month in which remarriage shall occur, *and the surviving spouse* shall also receive per month for each child of the deceased under the age of sixteen years at the time any monthly payment is due the following payments: For the youngest or only child twelve dollars and fifty cents ($12.50), for the next or second youngest child seven dollars and fifty cents ($7.50), and for each additional child five dollars ($5.00): Provided, That in addition to the monthly payments above provided for, a surviving widow of any such deceased workman shall be forthwith paid the sum of two hundred and fifty dollars ($250.00)." (Italics mine.)

It will be observed that all payments provided by this subdivision of the statute are conditioned upon the deceased workman leaving a widow or an *invalid* widower. The deceased worker in this case was a woman. She left surviving her a husband, Ernest Epley, and two minor children. The court found that the respondent was "an able-bodied man, not an invalid." No exception was taken to that finding, and it now stands as an admitted fact.

The sole question before us here is whether "an able-bodied man, *not an invalid*" is, as a surviving spouse, entitled, under the above statute, to receive compensation for his minor children under sixteen years of age.

Measured by the terms of the statute, the answer necessarily must be "No"; this court, in the prevailing opinion, however, says "Yes." The majority rather grudgingly concedes that, if the statute alone be considered, it might call for an exclusion of the parties here concerned; but, because of what is conceived to be an implication to the contrary in the case of *Anthony v. National Fruit Canning Co.*, 185 Wash. 637, 56 P. (2d) 688, concludes that the statute is to be interpreted to mean that "an able-bodied man, *not* an invalid" *is entitled to take* thereunder for the support of his minor children.

I am satisfied that neither the wording nor the spirit of the workmen's compensation act permits any such thing; and that the *Anthony* case, when considered in the light of the facts there involved, does not compel, nor even support, the conclusion reached by the majority.

The workmen's compensation act is founded upon reasons of public policy and economy. This is universally recognized. The very first section of our act provides:

"The common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. In practice it proves to be *economically unwise and unfair.* Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon

its industries, and even more upon the welfare of its wage worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is *hereby* provided regardless of questions of fault *and to the exclusion of every other remedy, proceeding or compensation,* except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided." (Italics mine.) Rem. Rev. Stat., § 7673 [P. C. § 3468].

In this sweeping language is set forth a statement indicating the reasons for the adoption of the act, the evils sought to be overcome, the certainty and extent of relief provided, as therein prescribed, the persons entitled to protection, and the exclusiveness of the prescribed remedy.

The scope of the act is then more definitively stated in Rem. Rev. Stat., § 7679, which contains the schedule of awards. The introductory part of that section reads as follows:

"Each workman who shall be injured in the course of his employment, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation *in accordance with the following schedule,* and, except as in this act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever." (Italics mine.)

After a provision in the same section covering funeral expenses, there follows subdivision (1) (which is Rem. Rev. Stat., § 7679 (a) (1)), quoted in the opening part of this opinion and also in the prevailing opinion, and which provides the amount of compensation to be paid to the widow or invalid husband

of a deceased workman and also for such children of the deceased as are under the age of sixteen years. Subsequent divisions of the same section make provision for monthly payments of twenty-five dollars to orphan children and limited support to other dependents. By Rem. Rev. Stat., § 7675 [ P. C. § 3470], the term "dependents" is defined to mean the following-named relatives of a workman whose death results from an injury and who leaves no surviving widow, widower, or child under the age of sixteen years, viz: Invalid child over the age of eighteen years, daughter between sixteen and eighteen years of age, father, mother, grandfather, grandmother, stepfather, stepmother, grandson, granddaughter, brother, sister, half-sister, half-brother, niece, nephew, who at the time of the accident are actually and necessarily dependent in whole or in part for their support upon the earnings of the workman. Exception is then made of aliens, other than father or mother, not residing within the United States at the time of the accident.

It is, therefore, clear that the legislature had in mind the exact persons whom it was intended to compensate, the specific conditions under which they were to be recognized, and the precise amounts that each should receive. It is equally clear that the legislature did not intend to compensate persons other than those definitely mentioned, nor in amounts greater than those specifically designated. In short, by designating those deemed economically dependent and the amounts to be paid them, the legislature excluded all others from recovering benefits and, furthermore, limited the amounts to be paid to those who were therein included.

It requires no great amount of imagination, nor does it compel any serious inquiry, to discover why the legislature specifically designated the persons who

were to come within the protection of the act, the conditions under which they were to be recognized, and the amounts which were to be paid to them. The legislature had in mind the extent to which industry should bear the burdens incident to extrahazardous occupation and the identity of those who were reasonably entitled to the aid thus created. Some limitations necessarily had to be made as to age and dependency. For some reason or other, the legislature, in Rem. Rev. Stat., § 7679 (a) (1), considered that sixteen years marked the limit of inability on the part of minors to earn their own support. For some reason or other, the legislature also thought that an able-bodied widower should support his minor children. In any event, the legislature declared that the state would not assume the support of those two classes of children, but would, as to the one class, leave that responsibility directly with them and, as to the other, would impose the duty upon those who were morally or legally obligated to care for them.

To me, the restrictions thus imposed seem entirely reasonable and free from any imputation of injustice. But if it should be said, or if it could be thought, that the legislature has not been as generous as it should have been, that is not a matter for the courts.

"But whatever may have been the thought of the legislature, we are not concerned with its policy or its impolicy. It is not the province of the court to judge of the wisdom or expediency of a statute when the intention of the legislature is clearly expressed.

" 'When the meaning of a statute is clear, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by the legislature and not by judicial construction.' Lewis' Sutherland, Statutory Construction, § 367." *North Spokane Irrigation Dist. v. Spokane County,* 173 Wash. 281, 22 P. (2d) 990.

For us to enlarge the limits of protection under the statute is to rewrite the statute or, as often termed, "judicial legislation."

The result of the prevailing opinion is that the word "invalid" has been deliberately written out of the statute. The logical consequence of this is that the benefit of the statute is extended not only to the minor children who have an able-bodied father, but to the father also, whether he be invalid or able-bodied.

If the claimant in this case be entitled to take for the support of his minor children, under the interpretation given by the majority, then, by the same token, he is entitled to recover a monthly payment of thirty-five dollars for himself, and only his modesty in failing to present a claim in that respect precludes his recovery. With this decision before them, other claimants will perhaps not be so modest, and it will require the utmost agility and resiliency of mind, I think, to advance a reason why such claims, when presented, should not be allowed. It appears to me that we are governed by the statute, and if we are, then this claim can not stand.

I now come to the case of *Anthony v. National Fruit Canning Co.*, 185 Wash. 637, 56 P. (2d) 688, which the majority uses as an argument for its present conclusion. The interpretation placed on that case is contained in this one sentence in the prevailing opinion:

"It seems too plain for argument that the theory upon which they [the claimants Anthony] were denied relief in their action for wrongful death was that their remedy was to be found in the compensation act."

It is first to be observed that, in the *Anthony* case, suit had been brought against an employer under the wrongful death statute, Rem. Rev. Stat., §§ 183, 183-1. The *only question* before the court was whether an action could be maintained under that statute.

It may also be noted, in passing, that the action was brought for the benefit of *the widowed husband* and four children under sixteen years of age. As stated by the majority, the specific question presented in the *Anthony* case was:

"Where a woman workman dies as a result of injury in extrahazardous employment, can the minor children *and the surviving husband, who is not an invalid,* maintain an action under the wrongful death statute against the employer, through the personal representative of the deceased workman?"

I have italicized a part of the quotation because it illustrates and emphasizes the effect of the prevailing opinion in this case.

In answering that question in the *Anthony* case, the court held, first, that Rem. Rev. Stat., §§ 183, 183-3 [P. C. §§ 8259, 8263], did not repeal or supersede any part of the workmen's compensation act. With that, I am in entire accord. Proceeding with its discussion in that case, the court then pointed out that it was therein dealing with an injury consisting of a

" . . . 'sudden and tangible happening of a traumatic nature producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom,' which is the meaning of the word 'injury' in the workmen's compensation act, . . ."

Having found and defined the nature of the injury, the court then said that it fell *within the scope and purpose* of the workmen's compensation act. What the court specifically decided in that case was that the claim did not fall within the provisions of Rem. Rev. Stat., §§ 183, 183-1, but within the provisions of the compensation act, that is to say, the remedy, *if any,* must be sought, not in an action against the employer, but by a claim under the provisions of the workmen's compensation act. However, the court did not say, and

it could not say in that action, that the provisions of the workmen's compensation act were broad enough to include a widower who was not an invalid.

The majority seems to think that, merely because Rem. Rev. Stat., §§ 183, 183-1, do not afford a remedy, the workmen's compensation act must. The correct statement of the situation is, as I see it, this: The claimant in such cases may not look to the wrongful death statute at all, but must look to the workmen's compensation act to see whether his claim is covered thereby, but if that act does not provide a remedy for him, he has no remedy at all. Having provided, as it did in Rem. Rev. Stat., § 7673, that "all phases of the premises are withdrawn from private controversy," and having abolished "all civil actions and civil causes of action for such personal injuries," the legislature then set up a complete scheme of compensation and specifically provided, in detail, just how far the state would go, and to what extent compensation was to be allowed. The provisions of the workmen's compensation act marked the limit of recovery, and its exclusions and inclusions are equally potent and binding. Those who were not provided for in the act were left without a remedy simply because they had no rights on which to found a remedy.

The decision in the *Anthony* case, *supra,* contains no new principle or pronouncement. Over twenty-five years ago, in *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, this court said, "The act here in question takes away the cause of action."

In *Peet v. Mills,* 76 Wash. 437, 136 Pac. 685, Ann. Cas. 1915D, 154, L. R. A. 1916A 358, it was held that the act did not even permit an employee to sue a third party whose negligence produced the injury.

In *Zenor v. Spokane & Inland Empire R. Co.,* 109

Wash. 471, 186 Pac. 849, it was held that a workman in the employ of the city of Spokane had no right of action against the defendant company for injuries received in contacting electric wires of the company.

In *Rasi v. Howard Manufacturing Co.,* 109 Wash. 524, 187 Pac. 327, it was held that, although respondent was a minor, she was nevertheless a workman and could not therefore maintain an action for injuries.

In *Perry v. Beverage,* 121 Wash. 652, 209 Pac. 1102, 214 Pac. 146, it was held that a workman's action against an employer and his foreman for injuries sustained in an assault by the latter was barred by the workmen's compensation act.

In *Carmichael v. Kirkpatrick,* 185 Wash. 609, 56 P. (2d) 686, the right of a workman to sue for malpractice was again denied.

And, finally, in *Northern Pac. R. Co. v. Meese,* 239 U. S. 614, 60 L. Ed. 467, 36 S. Ct. 223, it was held, in construing the case of *Peet v. Mills, supra,* that the workmen's compensation act precluded the maintaining of an action for the wrongful death of a workman.

Had there been no workmen's compensation act, there could in this case have been only a right of action under the wrongful death statute. But such is not and never was a common law right. 8 R. C. L. 722; 17 C. J. 1181. Lord Campbell's Act of England, which first gave such a right of action, was not passed until 1846, and the first statute of that kind in this country was enacted in New York in 1847, and in this state in 1854. It being a statutory right, the legislature could, and did, as we have pointed out, take it away. There could be no vested right in a statutory action.

"Where a tort action can be *brought only by virtue of a statute,* there can be no vested right therein, and the legislature may take away the right at any time. That it was the intention of the legislature to take

away the right of action can hardly be questioned. The language itself providing that 'no action may be brought' would so indicate." *Robinson v. McHugh,* 158 Wash. 157, 291 Pac. 330.

The same principle dealing with the right of the legislature to take away a right or remedy imposed by statute is reiterated and approved in *Denning v. Quist,* 160 Wash. 681, 296 Pac. 145, wherein this court said:

·"This right being purely statutory, it was competent for the legislature to limit the same . . . and we are satisfied that the correct rule was laid down by this court in the case of *Robinson v. McHugh, supra.*"

*Robinson v. McHugh, supra,* has since been approved in *Long v. Thompson,* 177 Wash. 296, 31 P. (2d) 908. See, also, *Denning v. Quist,* 172 Wash. 83, 19 P. (2d) 656; *Mattson v. Department of Labor & Industries,* 176 Wash. 345, 29 P. (2d) 675.

In *New York Central R. Co. v. White,* 243 U. S. 188, 37 S. Ct. 247, Ann. Cas. 1917D, 629, it is said:

"It may be added, by way of reminder, that the entire matter of liability for death caused by wrongful act, both within and without the relation of employer and employee, is a modern statutory innovation, in which the states differ as to who may sue, for whose benefit, and the measure of damages."

In *Grant v. Libby, McNeill & Libby,* 145 Wash. 31, 258 Pac. 842, in dealing with the laws relating to rights of action for wrongful death, it was said:

"It must be remembered that the action is a statutory one, created by § 183, and not a common law action, and the beneficiaries defined by § 183-1 . . . There must be a right of action under § 183 and beneficiaries as defined by § 183-1. The beneficiaries must be dependents, must be wholly or in part dependent upon the deceased, . . ."

So it is with the workmen's compensation act. The beneficiaries and dependents are not only enumerated,

but the conditions under which they may receive compensation are also prescribed. In speaking of the inadequacy of an award under this act, this court, in *Foster v. Industrial Ins. Commission,* 107 Wash. 400, 181 Pac. 912, said:

"We also regard the award as pitifully inadequate; but, as we shall see, the correction of such insufficiency is neither with the courts nor with the commission, but must be remedied by the legislative function of the state alone. The industrial insurance act is not one designed to award full compensation to each individual for all such damages as such individual would be entitled to in his particular circumstances, but is only a system of limited insurance. . . ."

If the workmen's compensation act does not provide compensation for certain persons, then manifestly they can not recover thereunder.

The majority opinion cites the case of *Roswall v. Grays Harbor Stevedore Co.,* 132 Wash. 274, 231 Pac. 934, which holds that a right of action given by Rem. Rev. Stat., § 183, for injuries arising out of a maritime tort, was not abolished by the workmen's compensation act, because such torts were not within the compass of the act. The majority refers to that case as holding that the workmen's compensation act abolished the remedy of the death statute "only in those causes falling within the scope of the act . . . not those wherein it does not afford a complete remedy for both the employer and the employee." The quotation as thus given has its force only through the ellipsis employed. The statement of the court in that case, quoted in its entirety, is as follows:

"The compensation act does not abolish the remedy of the death statute entirely. It abolishes the remedy only in those causes falling within the scope of the act—torts causing injury or death in extrahazardous occupations over which the state has sole and exclusive jurisdiction—not those wherein it does not afford

a complete remedy for both the employer and the employee."

It is thus apparent that the court in the *Roswall* case specifically held that torts causing injury or death in extrahazardous occupations were within the sole and exclusive control of the state, and that, as to such, the compensation act abolished the remedy of the death statute entirely.

So, in this case, the injury and death arose in an extrahazardous occupation and therefore fell entirely without the death statute. It was controlled by the provisions and limitations of the workmen's compensation act; but, since that act does not give compensation to a widower who is not an invalid, either for himself or for his minor children, no recovery can be had thereunder.

Reverting once more to the *Anthony* case and the question therein propounded, it is plain that, if the interpretation given it by this court is to prevail, then a *widower who is not an invalid,* as well as his minor children, are entitled to compensation, which is in the very teeth of the statute and accomplishes a result which even the majority, I think, does not contemplate.

I dissent.

STEINERT, C. J., BEALS, and ROBINSON, JJ., concur with TOLMAN, J.

## ON REHEARING.

### [*En Banc.* November 17, 1937.]

PER CURIAM.—On August 16, 1937, there were filed in this case the following: (1) an opinion in which four of the judges of this court, as then constituted, concurred; (2) an opinion specially concurring in the result of the preceding opinion; and (3) a dissenting

opinion in which the then remaining four judges concurred.

On September 20, 1937, Judge Warren W. Tolman, the writer of the dissenting opinion, resigned his position as judge of this court and was succeeded in office by Judge George B. Simpson. Thereafter, on October 13, 1937, a petition for rehearing of the above-entitled cause was granted, and the cause was reheard *En Banc* on October 27, 1937, with the following results: Judges Main, Holcomb, Blake, and Geraghty adhere to the views expressed in the original opinion of Judge Holcomb; Judge Millard adheres to the views originally expressed in his specially concurring opinion; Chief Justice Steinert, Judges Beals and Robinson adhere to the views expressed in the dissenting opinion of former Judge Tolman; and Judge Simpson concurs in the views expressed in the dissenting opinion.