[No. 58831-1-I. Division One. November 13, 2007.]

JOSIE ARMANTROUT, *as Personal Representative*, ET AL., *Respondents*, v. ROBERT CARLSON ET AL., *Defendants*, CASCADE ORTHOPAEDICS ET AL., *Appellants*.

---

[28] *See* RCW 2.06.040.

718

*Steven F. Fitzer* and *Melanie T. Stella* (of *Burgess Fitzer, PS*), for appellants.

*Simeon Osborn* (of *Osborn Machler*), for respondents.

¶1 Cox, J. — At issue is whether services by an adult child to a parent are properly considered in determining whether that parent is "dependent . . . for support" for purposes of that parent qualifying as a beneficiary under the wrongful death statute. Because the provision of services in this case is not financial dependence under the statute and case law, we reverse and remand.

¶2 Eighteen-year-old Kristen Armantrout died from a pulmonary embolism that occurred two weeks after minor ankle surgery. At the time of her death, she was a single adult with no children.

¶3 Her parents, Josie and Warren Todd Armantrout, as personal representatives of Kristen's estate, sued Cascade Orthopaedics and her attending physician. They also sought to recover under the wrongful death statute on their own behalf as beneficiaries under the provisions of RCW 4.20.020.

¶4 At trial, Cascade objected to the wrongful death claim as well as to the testimony relating to the Armantrouts' dependence on Kristen. Cascade also moved for what the trial court characterized as a motion for judgment as a matter of law on that claim, which the trial court denied. Cascade excepted to the jury instructions concerning the Armantrouts' wrongful death claim and substantial financial dependence as well as to the special verdict form.

¶5 The jury found Cascade negligent and awarded the Armantrouts $1,150,000 in damages. The jury also awarded Kristen's estate $200,000, which is not at issue in this appeal. The attending doctor was found not negligent and therefore does not appeal the verdict.

¶6 Cascade appeals.

## DEPENDENT FOR SUPPORT

¶7 Cascade argues that the Armantrouts have no standing as beneficiaries under RCW 4.20.020 to bring a wrongful death action. We agree. The services Kristen provided her parents cannot be considered in assessing whether they were "dependent . . . for support" on her.

### Civil Rule 50

¶8 A motion for judgment as a matter of law should be granted to dismiss a claim if the evidence presented is insufficient to convince a reasonable jury of the issue.[1] An appellate court reviews a trial court's denial of such a motion only to determine whether substantial evidence

---

[1] CR 50(a)(1).

supported the claim.[2] Substantial evidence is evidence sufficient to convince a fair-minded person of the truth of the matter.[3] We review all facts and inferences in favor of the nonmoving party.[4]

¶9 The legislature created a two-tiered system of beneficiaries in Washington's wrongful death statute.[5] The first tier consists of the decedent's spouse and children, who have automatic standing to bring a wrongful death claim under the statute.[6] The second tier of the statute includes the decedent's parents. If a decedent has no spouse or child, a parent may bring a wrongful death claim under the second tier only if the parent is *dependent upon the deceased for support . . . .*"[7]

¶10 The parties agree that since the early 1900s, Washington courts have uniformly interpreted this phrase to mean *substantial financial dependence*.[8] A parent need not be wholly dependent on the deceased; partial but significant dependence will suffice.[9] But there must be "a necessitous want on the part of the parent, and a [financial] recognition of that necessity on the part of the child."[10] Dependence should be judged based on the current condition, not anticipated future conditions.[11] Emotional support, or providing the types of emotional services one

---

[2] *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 98, 882 P.2d 703, 891 P.2d 718 (1994).

[3] *Bunch v. King County Dep't of Youth Servs.*, 155 Wn.2d 165, 179-80, 116 P.3d 381 (2005).

[4] *Queen City Farms*, 126 Wn.2d at 98.

[5] RCW 4.20.020; *Philippides v. Bernard*, 151 Wn.2d 376, 385, 88 P.3d 939 (2004).

[6] RCW 4.20.020; *Philippides*, 151 Wn.2d at 385.

[7] RCW 4.20.020 (emphasis added).

[8] *E.g.*, *Bortle v. N. Pac. Ry.*, 60 Wash. 552, 554, 111 P. 788 (1910); *Masunaga v. Gapasin*, 57 Wn. App. 624, 628, 790 P.2d 171 (1990).

[9] *Grant v. Libby, McNeill & Libby*, 145 Wash. 31, 38, 258 P. 842 (1927).

[10] *Bortle*, 60 Wash. at 554; *see also id.* at 556 (paraphrasing the earlier stated rule and adding the word "financial").

[11] *Masunaga*, 57 Wn. App. at 629.

expects from a family member, is outside the scope of the statute.[12]

¶11 Cascade argues that the entire question whether the Armantrouts were dependent on Kristen is an issue of law. To the contrary, our supreme court has previously allowed the question to go to the jury if substantial evidence supports a finding of dependence.[13]

¶12 Cascade challenges generally the three jury instructions relating to the Armantrouts' wrongful death claim, arguing that there is insufficient evidence as a matter of law to support that the Armantrouts were dependent on Kristen for support. We conclude that substantial evidence supported the instructions generally.

¶13 There is substantial evidence in the record that the Armantrouts depended on Kristen for approximately $588 per month. Josie and Todd both testified that Kristen gave them her disability benefits check each month to help with family expenses. They also testified that at least one reason Kristen relinquished her check each month was to help cover her own living expenses. Despite this fact, Josie and Todd testified that they relied on this money each month to pay family bills, and they would have had to borrow money if Kristen had not given it to them. Thus, substantial evidence supports that the Armantrouts financially depended on Kristen's monetary contribution to the family.

¶14 Cascade also argues that the Armantrouts did not truly need this money for support because they created their own hardships by attempting to maintain two different households at the same time. We disagree.

¶15 Financial dependence need not be complete dependence, and it is based on the current, not the anticipated

---

[12] *Id.* at 628.

[13] *See Mitchell v. Rice*, 183 Wash. 402, 48 P.2d 949 (1935) (issue of dependency properly reserved for the jury when there was substantial evidence that the father depended on monetary payments from the deceased).

future, situation.[14] Mr. Armantrout had lost his job, and the family felt that the proper decision was for his wife and daughter to stay behind to prepare the house for sale while he obtained another job elsewhere. We will not second-guess that decision. The evidence supports the finding, and the jury was properly allowed to determine the significance of the family's decision.

¶16 Cascade argues that as a matter of law, a check Kristen received for being dependent upon her mother cannot form the basis for her mother's dependence on Kristen. But Cascade does not identify any legal authority for its argument, and we have found none. The jury was allowed to consider the source and amount of the money and was properly permitted to determine whether it contributed to the Armantrouts being financially dependent on their daughter.

¶17 Thus, a jury could reasonably find that the Armantrouts were dependent on Kristen for support within the meaning of the statute and case law based solely on the payments of approximately $588 per month. But whether a jury actually would is not presently before us and should more properly be addressed after remand for the reasons we explain later in this opinion.

¶18 In any event, there was substantial evidence in the record that the Armantrouts were financially dependent on Kristen. The trial court properly denied Cascade's CR 50 motion.

### Judicial Estoppel

¶19 Similarly, Cascade argues that the doctrine of judicial estoppel should prevent consideration of the monthly check as financial support, given that the Armantrouts claimed Kristen as a dependent for purposes of Social Security, tax, and insurance benefits. We disagree because Cascade fails to make out a case for applying judicial estoppel.

---

[14] *Masunaga*, 57 Wn. App. at 628-29.

■■ ¶20 The doctrine of judicial estoppel is designed to prevent a party from benefiting by taking inconsistent positions in different litigation proceedings.[15] A court may consider the following six nonexclusive factors in applying this doctrine:

> "(1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; (6) it must appear unjust to one party to permit the other to change."[16]

¶21 Here, there was neither a prior judgment nor any prior litigation from which the Armantrouts benefited from claiming Kristen as a dependent. Cascade was never a party to any prior proceeding involving the Armantrouts. And Cascade cannot show how it was misled into changing its position in response to the Armantrouts' position.

¶22 Further, the positions that the Armantrouts take are not "clearly inconsistent." Cascade has not shown how the definitions of the word "dependent" in the federal tax code, the federal Social Security Act, 42 U.S.C. §§ 401-1397jj, the Armantrouts' insurance policy, or Washington's wrongful death statute are identical. These definitions exist in different statutes and in different contexts, requiring different proof.

¶23 For example, the relevant provision of the Social Security Act allowed Kristen to receive a benefit check as a dependent until she was 19 years old if she still attended school full time.[17] The statute states that a biological or adopted child is "deemed" dependent on his or her disabled

---

[15] *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 909, 28 P.3d 832 (2001).

[16] *DeAtley v. Barnett*, 127 Wn. App. 478, 483, 112 P.3d 540 (2005) (internal quotation marks omitted) (quoting *Falkner v. Foshaug*, 108 Wn. App. 113, 124 n.36, 29 P.3d 771 (2001)), *review denied*, 156 Wn.2d 1021, *cert. denied*, 549 U.S. 820 (2006).

[17] 42 U.S.C. § 402(d)(1).

parent unless the parent "was not living with *or* contributing to the support of such child . . . ."[18]

¶24 "Dependent" in the tax code means a child who, among other things, "has not provided over one-half of [his or her] own support" during that year.[19] It does not, as Cascade represents, state the reverse—that the parents have necessarily paid for more than half of the child's support.

¶25 We conclude that the reliance by the Armantrouts on these varying definitions is not "clearly inconsistent" with the position that they take in this case.

*Jury Instructions*

¶26 Cascade assigns error to the jury instruction defining financial dependence. It implicitly argues that the jury instruction erroneously allowed the jury to consider services in addition to financial support.[20] Cascade also argues that the jury should not have been allowed to hear testimony related to services. We agree.

¶27 Jury instructions are proper if they adequately state the law, do not mislead the jury, and allow each party to argue its theory of the case.[21] A party is entitled to a jury instruction only if it has offered substantial evidence to support the instruction.[22] We review a trial court's decision to submit jury instructions for an abuse of

---

[18] 42 U.S.C. § 402(d)(3) (emphasis added).

[19] 26 U.S.C. § 152(c)(1)(D).

[20] *See State v. Olson*, 126 Wn.2d 315, 318-19, 893 P.2d 629 (1995) (citing RAP 1.2(a) and concluding that cases should be decided on their merits despite technical violations of the rules).

[21] *Boeing Co. v. Key*, 101 Wn. App. 629, 633, 5 P.3d 16 (2000).

[22] *Stiley v. Block*, 130 Wn.2d 486, 498, 925 P.2d 194 (1996).

discretion.[23] We review de novo alleged legal errors in the instructions.[24]

¶28 An erroneous jury instruction requires reversal only if it is prejudicial.[25] Thus, instructions that are merely misleading require reversal only if they more likely than not affected the outcome of the trial.[26] But a clear misstatement of the law is presumed prejudicial, unless it affirmatively appears that it was harmless.[27]

¶29 The construction of a statute is an issue of law that we review de novo.[28] Our primary goal is to ascertain the legislature's intent.[29] If the language of the statute is clear, its plain meaning will reveal that intent.[30] If, however, the provision is ambiguous, the reviewing court may look to outside sources such as legislative history to determine legislative intent.[31] A statute is ambiguous if it is subject to more than one reasonable interpretation.[32]

¶30 Wrongful death actions in Washington are strictly statutory.[33] We liberally construe these remedial statutes only after the proper beneficiaries have been determined.[34]

¶31 Here, jury instruction 14, discussing financial dependence, stated in pertinent part:

[23] *Id.*

[24] *State v. Porter*, 150 Wn.2d 732, 735, 82 P.3d 234 (2004).

[25] *Boeing Co.*, 101 Wn. App. at 633.

[26] *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002).

[27] *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 151 Wn.2d 203, 211, 87 P.3d 757 (2004).

[28] *Burns v. City of Seattle*, 161 Wn.2d 129, 164 P.3d 475 (2007).

[29] *State v. Sullivan*, 143 Wn.2d 162, 174-75, 19 P.3d 1012 (2001).

[30] *See id.*

[31] *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

[32] *Id.*

[33] *Tait v. Wahl*, 97 Wn. App. 765, 771, 987 P.2d 127 (1999).

[34] *Id.* at 770.

The support may include *money, services, or other material benefits*, but may not include everyday services a child would routinely provide her parents.[35]

The trial court here gave this instruction based upon its interpretation of Washington's wrongful death statute, RCW 4.20.020.

¶32 The primary issue in this case is whether "[financial] support" under the wrongful death statute includes the rendering of services that have an economic value as well as the payment of money. We conclude that services that have an economic value do not fall within the meaning of financial support.

¶33 Since the early 1900s, Washington courts have uniformly interpreted "dependent . . . for support" to mean *financial dependence*.[36] The word "financial" means "relating to finance . . . ."[37] The word "finance" means:

**1** . . . : the pecuniary affairs or resources of a state, company, or individual . . . **2** : the obtaining of funds or capital . . . **3** : the system that includes the circulation of money, the granting of credit, the making of investments, and the provision of banking facilities. . . .[38]

It is apparent from the words used in these definitions (e.g., "money," "pecuniary," and "funds or capital") that "financial" means "monetary."

¶34 The Armantrouts cite no Washington case to the contrary. In discussing the requisite financial support, Washington cases have never suggested that financial support could include the types of services the Armantrouts received from their daughter.

¶35 For example, in *Bortle v. Northern Pacific Railway*, the supreme court held that the parents were not finan-

---

[35] Clerk's Papers at 92 (emphasis added).

[36] *E.g., Bortle*, 60 Wash. at 554.

[37] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 851 (1993).

[38] *Id.*

cially dependent for support upon their 25-year-old son, who did not live at home but intermittently contributed small gifts of money to his parents, for a total of about $100 per year.[39] And in *Mitchell v. Rice*, substantial evidence supported that the father was financially dependent on his son for monetary payments throughout the years.[40] Likewise, in *Cook v. Rafferty*, financial dependence was established based on the "pecuniary loss" the parents suffered at the death of their daughter, who did not pay rent, but "contributed to the expenses of the household."[41]

¶36 Moreover, the more recent Washington cases cited by the parties do not support the Armantrouts' position. *Masunaga v. Gapasin* merely reaffirmed that financial support, not emotional support, is required under the statute.[42] The parents in that case conceded that they were not financially dependent on their deceased son, and they unsuccessfully argued that emotional dependence should also qualify.[43]

¶37 Although the court in that case briefly discussed the provision of services and concluded that the parents were not dependent on those services, it did not state that such dependence would have constituted financial support.

¶38 Financial independence was also conceded in *Schumacher v. Williams*.[44] So that case does not help define the term.

¶39 More recently, in *Philippides v. Bernard*, the supreme court clarified that certain amendments to the statute did not change the requirement that parents must be financially dependent on the deceased in order to main-

---

[39] 60 Wash. 552, 111 P. 788 (1910).

[40] 183 Wash. 402, 48 P.2d 949 (1935).

[41] 200 Wash. 234, 239-40, 93 P.2d 376 (1939).

[42] 57 Wn. App. 624, 790 P.2d 171 (1990).

[43] *Id*. at 627-28.

[44] 107 Wn. App. 793, 796, 28 P.3d 792 (2001).

tain a wrongful death cause of action.[45] In fact, in rejecting the parents' arguments to the contrary, the court stated:

> While we may agree that the value parents place on children in our society is no longer associated with the child's ability *to provide income* to the parents, the legislature has defined who can sue for the wrongful death and injury of a child and we cannot alter the legislative directive.[46]

This sentence suggests that the longstanding test of "financial" dependence or support is limited to the providing of income or money, not services with an economic value. While such a rule may not still be justified in present-day society, that is the rule the legislature has left in place, as our courts have consistently held. We also note that the legislature has had the opportunity to modify this standard but has chosen to leave in place the existing statute and its interpretive decisions.[47]

¶40 The trial court appears to have relied on out-of-state cases to support its conclusion that financial dependence may include services. For example, in *Chavez v. Carpenter*, the California State Court of Appeal held that a factual issue existed as to whether the parents were financially dependent on the decedent when the decedent provided to his parents $100 a week, groceries, grocery money, a $9,000 down payment on a car, and completed tasks such as yard work and automobile maintenance.[48]

¶41 Contrary to Cascade's argument, the statute in *Chavez* is quite similar to Washington's. Likewise, it has similarly been interpreted by the California courts to mean financially dependent for support.[49] But the similarities end there.

---

[45] 151 Wn.2d 376, 88 P.3d 939 (2004).

[46] *Id.* at 390 (emphasis added).

[47] *See Masunaga*, 57 Wn. App. at 629.

[48] 91 Cal. App. 4th 1433, 111 Cal. Rptr. 2d 534 (2001).

[49] *See id.* at 1445 (noting that "dependent on the decedent" in the statute has been interpreted to mean dependent for "financial support"). Thus, as in Wash-

¶42 We are not persuaded by the reasoning in *Chavez* because it does not explain why a jury should be allowed to consider services in addition to financial contributions. It also is unclear to what extent the court relied on services for its holding. The court merely concluded that the reasonable inference from all of the evidence taken together is that the parents relied on the decedent's "aid—at least to some extent—for life's necessities."[50]

¶43 More importantly, we reject the reasoning of *Chavez* because it directly conflicts with Washington's long history of requiring "financial" dependence.

¶44 The Armantrouts argue that the services their daughter provided had an economic value. But neither the statute nor the Washington cases construing it include services that have an economic value within the scope of substantial *financial* support. Rather, the cases have consistently focused on the financial nature of the support provided by the adult child to the parent. Despite policy considerations to the contrary, we cannot alter the legislature's determination of beneficiaries under the statute.[51]

¶45 Here, the jury instruction[52] misstated the law because, as discussed above, conferring services and other benefits does not constitute financial support. Thus, the trial court committed an error of law.

¶46 Although the parties did not address the issue, we must also determine whether this error was prejudicial. We

---

ington, to qualify under the statute, a surviving parent must be substantially, financially dependent on the decedent for support.

[50] *Id.* at 1448.

[51] *See Schumacher*, 107 Wn. App. at 805 (Ellington, J., concurring) (declining to exercise the legislative function of extending the law to nondependent survivors "despite strong policy considerations" to do so).

[52] Jury Instruction 14 states in relevant part, "The support may include money, services, or other material benefits, but may not include everyday services a child would routinely provide her parents." Clerk's Papers at 92.

conclude that the instruction is presumed prejudicial because it misstated the law.[53]

¶47 Even were we not to presume prejudice, the instruction caused actual prejudice. As discussed previously in this opinion, substantial evidence supports the determination that the daughter gave financial support to her parents by way of approximately $588 each month. There is also evidence in the record that her mother depended on her services for support. Josie, the mother, testified that Kristen helped prepare the house for sale, which included doing housework, packing, and yard work. Kristen also acted as Josie's personal assistant, helping her with things a blind person cannot do alone. For example, Kristen ran errands, paid the bills, drove Josie to appointments and other places, helped Josie take notes in class and do other school-related reading, and medically assisted her. Josie would have had to pay someone else to do these activities if Kristen had not, and Josie could not afford to do so. In fact, the expert economist testified that the services Kristen provided for Josie had a value of approximately $36,553 per year.

¶48 Comparing the amount of the purely monetary contribution with the value of services, it is apparent that the erroneous jury instruction and supporting testimony likely affected the jury's verdict that the Armantrouts were substantially dependent on Kristen. Kristen gave her parents about $588 per month, which would total about $7,056 per year. In contrast, the value of her services was $36,553 per year. Based on a comparison of these two values, the inclusion of the clause "services, or other material benefits" in the instruction makes a decidedly more persuasive case for dependence than if that clause had been excluded. We conclude that the erroneous instruction prejudiced the outcome of the trial.

---

[53] *See Keller,* 146 Wn.2d at 251 (". . . to the extent that the instruction misstated the law, it is presumed to be prejudicial").

¶49 We reverse the judgment and remand for a new trial.

APPELWICK, C.J., and GROSSE, J., concur.

Review granted at 164 Wn.2d 1024 (2008).