[No. 81195-4. En Banc.]
Argued May 19, 2009. Decided September 10, 2009.

JOSIE ARMANTROUT, *as Personal Representative*, ET AL., *Petitioners*, v. ROBERT CARLSON ET AL., *Respondents*.

---

*Simeon Osborn* and *Susan Machler* (of *Osborn Machler*), for petitioners.

*Steven F. Fitzer* and *Melanie T. Stella* (of *Burgess Fitzer, PS*); and *Timothy R. Gosselin* (of *Gosselin Law Office, PLLC*), for respondents.

*Bryan P. Harnetiaux* on behalf of Washington State Association for Justice Foundation, amicus curiae.

¶1 MADSEN, J. — This case involves a wrongful death suit by the parents of an adult child against her medical care provider. We are asked to decide if the provision of services that have an economic value may be considered by the trier of fact when determining whether a parent was "dependent for support" on an adult child as required by RCW 4.20.020 to maintain an action for wrongful death. We now hold that the trier of fact may consider a parent's financial dependence on these services.

## FACTS

¶2 At the time of her death, Kristen Armantrout was 18 and living at home with her mother. She died of a pulmonary

embolism two weeks after having surgery on her ankle. Kristen's mother, Josie, has diabetes and is blind. Kristen provided her mother with a variety of services. Kristen was her mother's driver and reader. She also helped her mother with medical needs such as glucose readings and insulin injections. The testimony at trial showed that the services Kristen provided to her mother were valued at around $36,553 per year. Kristen also contributed her $588 monthly disability benefits check to the household expenses.

¶3 At trial, a jury found that Cascade Orthopaedics was negligent and that their negligence was the proximate cause of Kristen's death. The jury awarded Kristen's estate $200,000. The jury also found that the Armantrouts were "substantially financially dependent on Kristen for support" and awarded them $1.15 million. Br. of Appellant, App., Tab 2 (special verdict form).

¶4 The Court of Appeals overturned the jury verdict and held "the jury instruction misstated the law because . . . conferring services and other benefits does not constitute financial support." *Armantrout v. Carlson*, 141 Wn. App. 716, 731, 170 P.3d 1218 (2007) (footnote omitted).

¶5 The jury instruction defining dependency read:

> The plaintiff has the burden of proving that Kristen Armantrout's mother and father were substantially financially dependent upon her for support. Substantial financial dependence requires a showing of a need or necessity for support on the part of the parents and an agreement by Kristin [sic] to provide such support. In determining whether Josie and Todd Armantrout were substantially financially dependent on Kristen, you should consider the extent of Kristen's financial contributions to her parents and whether or not such support was likely to continue for a period of time. The support may include money, services, or other material benefits, but may not include everyday services a child would routinely provide her parents. You may not consider emotional support Kristin [sic] may have provided her parents.

Substantial financial dependence may be partial, but must be based on current financial contributions, not the promise of future contributions or services.

Br. of Appellant, App., Tab 1 (Instruction 14).

¶6 Earlier in the trial proceedings, Cascade sought judgment as a matter of law on the Armantrouts' wrongful death claim, arguing they could not prove substantial financial dependence on Kristen. The trial court heard argument from both parties and ruled the claim could proceed to trial because the issue of "substantial financial dependence" is "a question of fact to be determined by the jury; that a reasonable jury could find from [the] evidence that Mr. and Mrs. Armantrout were substantially dependent upon their daughter for support." Br. of Appellant at 13.

¶7 On appeal, the Court of Appeals rejected the trial court's definition of "dependence" as including services. The court vacated the jury verdict in favor of the Armantrouts because, it reasoned, the instruction "misstated the law" and "caused actual prejudice" to Cascade. *Armantrout*, 141 Wn. App. at 731-32.

## ANALYSIS

¶8 RCW 4.20.020 establishes two tiers of beneficiaries in a wrongful death suit. The first tier includes the decedent's "wife, husband, state registered domestic partner, child or children, including stepchildren." If there are no first tier beneficiaries, the wrongful death action "may be maintained for the benefit of the parents, sisters, or brothers, who may be dependent upon the deceased person for support." RCW 4.20.020. As part of the original code of Washington, the wrongful death statute has always required second tier beneficiaries to demonstrate their dependence on the decedent. Rem. Rev. Stat. §§ 183, 183-1.

¶9 The words "dependent" and "support" are not defined in the statute. In what appears to be the first case interpreting the meaning of dependency, this court wrote:

[W]e would not give [the statute] such a strict construction as to say it means wholly dependent, or that the parent must have no means of support or livelihood other than the deceased, such a construction being too harsh and not in accordance with the humane purpose of the act. Nevertheless, there must be some degree of dependency, some substantial dependency, a necessitous want on the part of the parent, and a recognition of that necessity on the part of the child.

*Bortle v. N. Pac. Ry.*, 60 Wash. 552, 554, 111 P. 788 (1910).

¶10 The need for "substantial dependency" expressed in *Bortle* has been further defined as "a term having relation to the circumstances of the plaintiff." *Mitchell v. Rice*, 183 Wash. 402, 407, 48 P.2d 949 (1935) (claimant father was in a difficult financial situation and unable to sustainably support self); *Estes v. Schulte*, 146 Wash. 688, 689, 264 P. 990 (1928) (claimant sister's only income was from funds contributed by decedent). The dependency must be based on the situation existing at the time of decedent's death and not on promises of future contributions. *Grant v. Libby, McNeill & Libby*, 145 Wash. 31, 37, 258 P. 842 (1927). The dependency cannot, however, be created on the basis of emotional support alone. *See Philippides v. Bernard*, 151 Wn.2d 376, 384-85, 88 P.3d 939 (2004) (interpreting RCW 4.24.010 to hold that the legislature's creation of a new support requirement for parents of minors that included emotional support did not abolish the financial support requirements for second tier beneficiaries in RCW 4.20.020).

¶11 Under these guidelines, courts have generally allowed claims by beneficiaries who can demonstrate they had a need for the decedent's regular contributions of support. *Estes*, 146 Wash. at 689 (though the amounts varied, decedent provided monetary contributions regularly over a course of years); *Mitchell*, 183 Wash. at 406-07 (decedent gave various sums of money to father at regular intervals over the course of the two years preceding his death). Courts have generally disallowed claims where the claimant cannot "identify evidence suggesting that they

needed or were dependent upon [decedent's] services." *Masunaga v. Gapasin*, 57 Wn. App. 624, 629, 790 P.2d 171 (1990) (emphasis omitted); *see also* David C. Cummins, Comment, *Damages in Washington Wrongful Death Actions*, 35 WASH. L. REV. 441, 449-50 (1960) ("Contributions which may be characterized as casual gifts do not achieve the required status.").

¶12 All parties in this case agree that Washington courts have long interpreted "dependent for support" to require a showing of financial dependence. Resp'ts' Pet. for Review at 14; Suppl. Br. of Resp't at 2. To be certain, a majority of wrongful death suits by second tier beneficiaries involve assessments of the monetary contributions made by decedents to the parties asserting claims. However, until now, no Washington court has explicitly held that financial dependence must be assessed on the basis of monetary contributions alone. We are asked to do so in this case.[1]

¶13 When interpreting a statute we look first to the plain language. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Further, readings well grounded in prior judicial constructions are given weight. *Fed. Commc'ns Comm'n v. Pacifica Found.*, 438 U.S. 726, 740, 98 S. Ct. 3026, 57 L. Ed. 2d 1073 (1978). The operative phrase in RCW 4.20.020 is "who may be *dependent upon the deceased person for support*." (Emphasis added.) The statute does not define "dependent" or "support" so we turn to the dictionary. *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976). "[D]ependent" is defined as "unable to exist, sustain oneself, or act suitably or normally without the

---

[1] Cascade attempts to set the stage for our interpretation of RCW 4.20.020 by arguing for strict construction of the statute. It contends that a strict interpretation of the statute mandates proof of dependency through evidence of monetary contributions from the decedent to the beneficiary. However, "[w]hether done liberally or strictly, judicial interpretation is necessary [because dependence on services with a monetary value is] not *necessarily* excluded under the terms of RCW 4.20.020." *Armijo v. Wesselius*, 73 Wn.2d 716, 720, 440 P.2d 471 (1968) (holding that RCW 4.20.020 included illegitimate children as statutory beneficiaries because they were not excluded from the terms of the statute and were within the dictionary definition of the word "child"). As in *Armijo*, the statutory phrase at issue in this case requires judicial interpretation and we need not choose between liberal or strict methodologies in order to resolve its meaning.

assistance or direction of another or others." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 604 (2002). "[S]upport" is defined as "[s]ustenance or maintenance; esp., articles such as food and clothing that allow one to live in the degree of comfort to which one is accustomed" and "[o]ne or more monetary payments to a current or former family member for the purpose of helping the recipient maintain an acceptable standard of living." BLACK'S LAW DICTIONARY 1577-78 (9th ed. 2009). Plainly, the statute does not limit "support" to monetary contributions.

¶14 Cascade argues, however, that our prior construction of RCW 4.20.020 demonstrates that "dependent for support" must be read to require second tier beneficiaries to provide evidence of monetary contributions from the decedent. Specifically, Cascade argues that "[t]he determination that 'substantial financial dependence' is limited to the provision of money or income, and not merely services, is a holding well-grounded in Washington law." Resp. to Pet. for Review at 4.

¶15 While it is true that in many reported decisions proof of financial support involved monetary contributions, other cases support the view that providing services with an economic value may be considered as part of the dependency analysis under RCW 4.20.020. *Mitchell*, 183 Wash. at 407 (substantial dependency should be determined on the basis of "the circumstances of the plaintiff"); *Cook v. Rafferty*, 200 Wash. 234, 240, 93 P.2d 376 (1939) ("[H]ad [the decedent] lived, she would have continued to contribute to the support of the family and continued to care for her parents. . . . Mr. and Mrs. Cook suffered a pecuniary loss by reason of her death."). In *Cook*, the adult daughter lived with her mother and her invalid father; she also contributed to the expenses of the household. *Cook*, 200 Wash. at 239. Though the case does not detail the exact services she provided by caring for her parents, the court suggested that care for invalid parents amounted to a "pecuniary loss" when the adult child died. *Id.* at 240. Similarly, the Court of Appeals in *Masunaga* also recognized the possibility that

parents could be *dependent* on an adult child's services for support. 57 Wn. App. at 628-29.[2]

¶16 Cascade, though, focuses on our statement in *Philippides* that " 'the value parents place on children in our society is no longer associated with the child's ability to provide income to the parents.' " Resp. to Pet. for Review at 10 (emphasis omitted) (quoting *Philippides*, 151 Wn.2d at 390). Cascade reads too much into this language. The quoted language discusses a legislative change to the wrongful death proof requirements for parents of deceased *minor* children. Proof of financial dependence by parents of deceased adult children was discussed in *Philippides* only as a way to explain the statutory change distinguishing between the proof required by parents of *minor* children versus parents of deceased *adult* children who may qualify as second tier beneficiaries. 151 Wn.2d at 385 (holding proof of financial dependence was necessary because otherwise, "[a]ll parents who claim to be dependent on their children's love would be able to recover under RCW 4.24.010 on an equal footing with the spouse and children of the decedent, the first tier beneficiaries under RCW 4.20.020").

¶17 Our holding in *Philippides*, requiring parents to show something more than emotional dependence on adult children, should not be read to preclude truly dependent parents from claiming beneficiary status. Notably, the jury instruction in this case explicitly excluded the "everyday services a child would routinely provide" and any "emotional support Kristin [sic] may have provided her parents." Br. of Appellant, App., Tab 1 (Instruction 14). This was sufficient to properly guide the jury in considering the value of Kristen's services within the context of the Armantrouts overall financial dependence on her. Kristen Armantrout was able to support her blind, diabetic mother by providing

---

[2] Ultimately, the court in *Masunaga* dismissed the accounting services an adult child provided his parents, in part because it was " 'a privilege and an honor' for the *provider*." 57 Wn. at 629. While the court correctly analyzed the extent to which the parents were *dependent* on their son's services, unfortunately, the court's statement regarding the son's motive indicates a misunderstanding of the cultural mores leading some adult children to care for their parents.

valuable services in addition to a cash contribution. The jury decided that provision of these services, valued at $36,553 per year, combined with Kristen's contribution of her monthly disability check, was sufficient to establish the Armantrouts' substantial dependence on Kristen for support. The instruction and the jury's subsequent finding of substantial financial dependence accurately employ the language of RCW 4.20.020 and our holdings in *Bortle*, *Cook*, *Mitchell*, and *Philippides*.

¶18 Reading the statute as Cascade argues, to require proof of a *monetary* contribution by the decedent, would lead to absurd results and unfair application of the long-standing legislatively created right to an action for wrongful death: parents who received monetary contributions from their adult child to purchase valuable services would qualify as statutory beneficiaries, but parents who received those exact same services from their adult child would not. Nothing in the statute indicates the legislature intended such a level of incongruity.

¶19 Cascade also warns that if we allow the value of services to be included in the dependency assessment, "parents could qualify as second tier beneficiaries if they could show only that they were dependent on the services the child provided." Suppl. Br. of Resp't at 6. That is incorrect. *Philippides* clearly holds that parents cannot claim dependency on the basis of emotional support alone. 151 Wn.2d at 388. The facts of this case demonstrate the kind of services for which an economic value can be determined. The jury here considered the value of the services combined with Kristen's monthly contribution to determine that, in the context of their entire financial situation, the Armantrouts were substantially dependent on Kristen for support and would not otherwise have been able to pay for the services she provided. Resp'ts' Pet. for Review at 6-7; Pet'rs' Suppl. Br. at 10. By excluding the everyday services a child would routinely provide, the trial court clearly established the boundaries within which the jury would be allowed to consider the Armantrouts' financial dependence on valuable services.

¶20 We now hold that the trial court correctly stated the law: RCW 4.20.020 allows triers of fact to consider services that have a monetary value when assessing a claimant's dependency on the decedent for support. We reverse the Court of Appeals.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.